Katherine M. CHAMBERLIN

v.

**101 REALTY, INC.; Matthew Zsofka, individually and in his official capacity as President of 101 Realty, Inc.**

**Civ. No. 84–692–D.**

United States District Court,
D. New Hampshire.

Dec. 30, 1985.

Katherine A. Daly, Concord, N.H., for plaintiff.

Jack S. White, Nashua, N.H., Kevin G. Powers, Lynn, Mass., for defendants.

## ORDER

DEVINE, Chief Judge.

In this action plaintiff Katherine Chamberlin has brought suit against defendants 101 Realty, Inc. ("Realty"), and its president Matthew Zsofka, both individually and officially, for damages arising out of plaintiff's termination of employment with defendants. Realty is a real estate development corporation located in Amherst, New Hampshire, and it had employed plaintiff as an architect from February to September 1983. Plaintiff has raised one federal and three pendent state law claims in her complaint. Plaintiff complains in Count I that defendants' actions were unlawful under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, in Count II that defendants' actions constituted wrongful discharge under state law, in Count III that defendants' actions constituted intentional infliction of emotional distress under state law, and in Count IV that defendant Zsofka made defamatory remarks under state law. Presently before the Court is defendants' motion to dismiss, Rule 12(b), Fed.R.Civ.P., or alternatively for summary judgment, Rule 56, Fed.R.Civ.P., with respect to the three state law claims (Counts II through IV) and plaintiff's objection thereto.

### *Count II*

Consideration of a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., requires application of the rule that the "material facts alleged in the complaint are to be construed in the

light most favorable to the plaintiff and taken as admitted, with dismissal ordered only if the plaintiff is not entitled to recover under any set of facts it might prove." *Chasan v. Village District of Eastman*, 572 F.Supp. 578, 579 (D.N.H.1983), *aff'd without opinion*, 745 F.2d 43 (1st Cir.1984) (citations omitted). Upon review of plaintiff's complaint and application of the above standard thereto, the Court finds and rules that defendants' motion to dismiss Count II, the state law wrongful discharge claim, must be denied.

Plaintiff's complaint, paragraphs 7 through 25, alleges facts which, as construed in the light most favorable to plaintiff and taken as admitted, indicate that plaintiff was fired from her position as an architect in retaliation for rebuffing the improper sexual advances of her employer, defendant Zsofka. These allegations are strikingly similar to the facts supporting a claim for wrongful discharge in the seminal wrongful discharge case, *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974). The evidence in *Monge* was to the effect that plaintiff, a married woman with three children, was discharged, not for incompetence, but for her refusal to accept her supervisor's invitations to dating. These facts led the New Hampshire Supreme Court to declare (as an exception to the well-established rule that an employee at will can be discharged for any cause or no cause) that an employee has a right to recover for a termination of employment "motivated by bad faith or malice or based on retaliation." *Id.* at 133, 316 A.2d 549.

Understandably, ingenious counsel saw the *Monge* decision as an invitation to bring an action for wrongful discharge in every case of termination of employment. Accordingly, in *Howard v. Dorr Woolen Company*, 120 N.H. 295, 414 A.2d 1273 (1980), the plaintiff claimed his improper discharge was due to illness and age. The Court responded by holding that the doctrine of *Monge v. Beebe Rubber Company, supra*, is applicable only to situations "where an employee is discharged because he performed an act that public policy would encourage, or refused to do that which public policy would condemn." *Howard v. Dorr Woolen Company, supra*, 120 N.H. at 297, 414 A.2d 1273. The court went on to hold that a discharge due to sickness was not within this category, given the availability of medical insurance or disability provisions in an employment contract, and that the remedy for discharge because of age was to be found in the provisions of both state and federal statutes, specifically the New Hampshire law against discrimination, New Hampshire Revised Statutes Annotated ("RSA") 354–A, and the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 623, 626. *Id.*

The New Hampshire Supreme Court correlated *Monge* and *Howard* and articulated a two-part test for establishing a common-law claim for wrongful discharge. *Cloutier v. Great Atlantic & Pacific Tea Company*, 121 N.H. 915, 436 A.2d 1140 (1981). According to the court therein, to state a claim for wrongful discharge from employment, plaintiff must show that defendant was motivated by bad faith, malice, or retaliation, *and* must demonstrate that he was discharged because he performed an act that public policy would encourage or refused to do something that public policy would condemn. *Id.; see Vandegrift v. American Brands Corp.*, 572 F.Supp. 496 (D.N.H.1983).

If plaintiff can prove the facts with inferences therefrom as alleged in her complaint, recovery would be warranted under state law, and dismissal at this stage of the proceedings would therefore be inappropriate. Plaintiff has alleged first that her discharge was retaliatory in nature (Complaint, ¶¶ 20–25), and thus, if established, would satisfy the first test under *Cloutier v. Great Atlantic & Pacific Tea Company, supra*. While recognizing that the scope of the *Monge* decision has been narrowed, the Court is satisfied that public policy would condemn the acceptance of sexual harassment by an employee as a means of retaining employment; thus the second test under *Cloutier* for establishing a claim of wrongful discharge is satisfied. Plaintiff's

pleadings are accordingly sufficient to withstand a motion to dismiss.

### Count III

■ Defendants have also moved for summary judgment[1] with respect to Count III (Complaint, ¶¶ 26–31), which asserts a cause of action for intentional infliction of emotional distress. Defendants argue first that New Hampshire does not recognize such a cause of action, and second, that even if it did, the actions complained of by plaintiff are not sufficient to constitute the tort. For the following reasons, the Court finds these arguments to be without merit and rules that the motion for summary judgment must be denied.

While there is a paucity of New Hampshire case law discussing the tort of intentional infliction of mental distress, the Court's review thereof has revealed enough to satisfy it that such a cause of action does exist. Almost eighty years ago, the New Hampshire Supreme Court in *Prescott v. Robinson*, 74 N.H. 460, 69 A. 522 (1908), made reference to the recovery of damages for the intentional infliction of mental suffering. *Prescott* involved the issue of the extent to which a negligent defendant is liable for a plaintiff's emotional distress, and the court articulated that

> [i]f in the case at bar the fact was that the defendant maliciously inflicted the injury upon the plaintiff, one of the natural and intended results of the act would be to cause the plaintiff great mental distress.... It might not be incorrect to say that it would be conclusively presumed that the defendant's purpose was to inflict upon her the mental suffering she sustained, and hence ought to pay for it.

*Id.* at 465, 69 A. 522.

More recently the New Hampshire Supreme Court had occasion to discuss this cause of action in a case where a plaintiff complained that a defendant insurance

company intentionally inflicted mental distress by denying insurance coverage. *Jarvis v. Prudential Insurance Co.*, 122 N.H. 648, 448 A.2d 407 (1982). The court therein held:

> Assuming *arguendo* that this Court, in an appropriate case, would recognize the tort of intentional infliction of mental distress, this is not such a case. Our review of the factual allegations before us convinces us that the defendant's conduct would, as a matter of law, fail to meet the definition of 'outrageous conduct' set forth in the Restatement of Torts. Restatement (Second) of Torts § 46, at 72–73 (1965).

*Id.* at 652, 448 A.2d 407 (citation omitted). This language is significant to the extent that the New Hampshire Supreme Court had the opportunity to summarily dismiss the cause of action as one not cognizable under state law. The Court, however, shunned the opportunity to so dismiss, recognized that the cause of action might be appropriate in certain cases, and analyzed the claim on its merits. The action by the New Hampshire Supreme Court in *Jarvis* thus evidences the existence of a cause of action for intentional infliction of mental distress.

A year and a half after the *Jarvis* decision, the New Hampshire Supreme Court in a brief but succinct statement confirmed the existence of this cause of action under state law. In *Plante v. Engel*, 124 N.H. 213, 469 A.2d 1299 (1983), a plaintiff sought damages for severe emotional distress for a defendant's aiding and abetting in the interference with parental custody. While holding that certain damages are recoverable for the interference with parental custody, the court noted that "[w]e are of the opinion that a claim for the intentional infliction of emotional distress should be treated as a separate cause of action. *See* Restatement (Second) of Torts § 46 (1965)." If this cause of ·action was non-

---

1. Defendants have moved both for summary judgment, Rule 56, and for dismissal, Rule 12(b)(6), with respect to this claim. Defendants' motion to dismiss will be treated as a motion for summary judgment since matters outside the pleadings have been presented to the Court. *See* Rule 12(b).

existent, the New Hampshire Supreme Court would have had no reason to render such an opinion. This Court accordingly is satisfied that New Hampshire recognizes the tort of intentional infliction of emotional distress and that the elements of the cause of action are outlined in Restatement (Second) of Torts § 46 (1965).[2]

 The Court further finds upon review of the pleadings and other submitted documents, including affidavits and depositions, that genuine issues of material fact exist which must be resolved by the trier of fact. These issues include but are not limited to whether or not the complained-of actions by defendant Zsofka were intentional or reckless and how extreme the complained-of actions were. Accordingly, summary judgment would be inappropriate at this stage of the proceedings, and defendants' motion therefor must be denied.

### Count IV

Defendants have also moved for dismissal or summary judgment with regard to Count IV (Complaint ¶¶ 32–37), which asserts a cause of action for defamation. The alleged facts to support this cause of action are contained in paragraphs 33 and 34. Paragraph 33 provides:

> Upon firing plaintiff in September, 1984, defendant Zsofka stated to his Comptroller and to his lawyer that plaintiff had unlawfully removed from the offices of 101 Realty, Inc. property belonging to the corporation.

Paragraph 34 provides:

> Upon firing plaintiff in September, 1984, defendant Zsofka wrote to the Department of Employment Security, stating that plaintiff was fired 'for reasons other than lack of work' and was therefore ineligible for unemployment benefits. When defendant Zsofka was questioned

by a Department of Employment Security representative regarding this allegation, he stated that plaintiff spent a lot of time out of the office, did not spend enough time on her work, and did not do her work properly.

Plaintiff herein concedes, and the Court finds, that the allegations contained in paragraph 34 fail to state a cause of action under state law. As provided by RSA 282–A:122:

> No action for slander or libel, either criminal or civil, shall be predicated upon information furnished by any employer or any employee to the commissioner [of the Department of Employment Security] in connection with the administration of any of the provisions of this chapter.

Thus, where defendant Zsofka provided information to the Department regarding plaintiff's discharge, such information cannot form the basis of an action for defamation. The claim of defamation based on the facts alleged in paragraph 34 is accordingly dismissed.

The Court also finds and rules that defendants' motion for summary judgment[3] with respect to the defamation claim outlined in paragraph 33 of the complaint must be denied in part and granted in part. Rule 56, Fed.R.Civ.P., provides that a

> judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

In paragraph 33 plaintiff complains that defendant Zsofka defamed her by stating to his comptroller and to his attorney that she had unlawfully removed property from

---

**2.** This section of the Restatement (Second) provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

**3.** Defendants have moved both for summary judgment, Rule 56, and for dismissal, Rule 12(b)(6), with respect to this claim. Defendants' motion to dismiss will be treated as a motion for summary judgment since matters outside the pleadings have been presented to the Court. *See* Rule 12(b).

the offices of defendant Realty. Plaintiff was made aware of this alleged defamation upon receipt of letters from defendants' comptroller, Mr. Caron, and defendants' attorney, Mr. White. The letter from Mr. Caron read:

I have been trying for three days, without success, to reach you by telephone.

The reason I was calling, was to let you know that Matt [Zsofka] is demanding you return all materials in your possession which Matt has paid you for. This includes, but is not limited to, the Derry House models, along with any other plans that you were working on while in our employ.

Please deliver the above items prior to September 14, 1983; or, Matt has informed me that he will do whatever is necessary to obtain his rightful property.

Similarly, the letter from Mr. White read:

Please be advised that this office represents 101 Realty relative to the taking by you of certain scale models, blueprints, drawings, photographs, and other property or work products of 101 Realty, Inc.

Demand is hereby made upon you for the immediate return of this property within five (5) days from receipt of this letter.

If you fail to return the aforementioned property within this timeframe, then I will proceed with legal action against you for this unauthorized taking. Please do not underestimate the seriousness of your actions in taking this property of 101 Realty, Inc.

Defendants argue first that a mere allegation of unlawful activity, short of criminal conduct, does not rise to the level of actionable defamation. It is established, however, that in ruling on a motion for dismissal or summary judgment in a defamation case, it is for the Court to determine whether the language in question could reasonably have been read or understood to defame the plaintiff. *Duchesnaye v. Munro Enterprises, Inc.*, 125 N.H. 244, 252–53, 480 A.2d 123 (1984); Restatement

(Second) of Torts § 614 (1977). Language is defamatory when it tends "to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." *Morrissette v. Cowette*, 122 N.H. 731, 733, 449 A.2d 1221 (1982), *quoting Thomson v. Cash*, 119 N.H. 371, 373, 402 A.2d 651 (1979); W. Prosser, Torts § 111 at 743 (4th ed. 1971). And to be actionable, such defamation need be published to only one person other than plaintiff, with publication, as determined by the fact finder, occurring when the language was actually communicated and understood in the possible defamatory sense. *Duchesnaye v. Munro Enterprises, Inc., supra,* 125 N.H. at 253, 480 A.2d 123.

■ While it is unclear at this point exactly what language defendant Zsofka employed in expressing his concern to Mr. Caron, who relayed it to Mr. White, about the property removed from defendant Realty, and even whether such statements were slanderous (oral) or libelous (written), the Court is satisfied that the language as manifested in the subsequent letters from Mr. Caron and Mr. White could reasonably have been understood to defame plaintiff. The clear import of the language contained in the letters received by plaintiff reflects a belief that plaintiff unlawfully retained property that properly belonged to defendants herein. Such an allegation would undoubtedly damage plaintiff's reputation and lower her in the esteem of any substantial and respectable group. *See Robinson v. Keyser*, 22 N.H. 323 (1851) (actionable to call one a thief); *Harris v. Burley*, 8 N.H. 256 (1836) (actionable to call one dishonest and accuse him of taking items not belonging to him). Accordingly, defendants' first argument for summary judgment is rejected.

■ Defendants next argue that they are entitled to judgment as a matter of law on the ground that defendant Zsofka's remarks were conditionally privileged and thus not actionable. In support of this argument, defendants claim that a good faith dispute exists as to the ownership of the subject property, referring to plaintiff's

deposition testimony, wherein plaintiff admits that ownership of the property is debatable. With this admission in hand, defendants seek protection under the rule in *Chagnon v. Union Leader Corp.*, 103 N.H. 426, 438, 174 A.2d 825 (1961), *cert. denied*, 369 U.S. 830, 82 S.Ct. 846, 7 L.Ed.2d 795 (1962), which provides:

A conditional privilege ... is established if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of truth.

The Court finds, however, that the determination of the existence of such a conditional privilege must be made by the trier of fact, *see Pickering v. Frink*, 123 N.H. 326, 329, 461 A.2d 117 (1983); *Supry v. Bolduc*, 112 N.H. 274, 277, 293 A.2d 767 (1972), and upon review of the proffered attachments, the Court finds that there is a genuine issue of material fact, *viz* the existence of defendant Zsofka's good faith reasonable belief that the subject property had been unlawfully retained by plaintiff; hence, summary judgment would be inappropriate. Accordingly, defendants' second argument for summary judgment is rejected.

Defendants next argue that summary judgment should be granted with respect to the publication of the alleged defamatory language to defendants' attorney on the ground that such communication is privileged. The Court agrees.

It is established law that statements made in the course of judicial proceedings are absolutely privileged from liability in civil actions, provided they are pertinent to the subject of the proceedings. *Pickering v. Frink, supra,* 123 N.H. at 329, 461 A.2d 117; Restatement (Second) of Torts § 587 (1977). Statements made to an attorney during the course of legal representation have been found by the New Hampshire Supreme Court to be part of judicial proceedings, and thus privileged. *McGranahan v. Dahar,* 119 N.H. 758, 764–65, 408 A.2d 121 (1979). While recognizing that the attorney-client privilege may not be

absolute where, for instance, a compelling need exists for disclosure, the court held that forced disclosure of attorney communications could be inappropriate where the communications themselves were allegedly tortious. *Id.* According to the court:

Subjecting a client to liability, or indeed to the burden of defending against a defamation action, for statements made to his attorney pertinent to and during the course of legal representation would seriously impair the full and frank discussions that the attorney-client privilege is designed to protect.... On balance, the plaintiff's desire for civil damages in defamation is not sufficiently compelling to warrant abrogation of the attorney-client privilege.

*Id.* (citations omitted).

The Court is satisfied that defendant Zsofka's remarks as communicated to his attorney are subject to the attorney-client privilege. The remarks concerning ownership of the subject property were pertinent to a contemplated civil action, and thus are protected. *See, e.g., Sriberg v. Raymond,* 370 Mass. 105, 345 N.E.2d 882 (1976) (defamatory letter sent by attorney to prospective defendant privileged). Further, the dictation of the allegedly defamatory language by defendant's attorney to his secretary would not be a publication under the law of libel, *see, e.g., Rodgers v. Wise,* 193 S.C. 5, 7 S.E.2d 517 (1940), and thus not actionable, or even assuming that it was a publication, the scope of the attorney-client privilege is broad enough to include communications between the attorney and his secretary, particularly where the communication concerns a client's business. The Court also rejects the contention that defendants' attorney waived or abused the privilege. Accordingly, the Court grants summary judgment in favor of defendants, but only as to those communications made to defendants' attorney and the attorney's subsequent communication with his secretary.

Lastly, defendants argue that they are entitled to judgment as a matter of law on the ground that plaintiff has not suf-

fered any monetary damage and that the defamation claim is therefore not actionable. The Court disagrees.

Monetary or special damages, *see* Restatement (Second) of Torts § 575 comment b (1977), are not required to establish liability for libelous statements. As noted in the Restatement (Second) of Torts § 569 (1977):

> One who falsely publishes matter defamatory of another in such manner as to make the publication a libel is subject to liability to the other although no special harm results from the publication.

A written or printed imputation of a crime is sufficiently libelous to be actionable, and imputation of such crime need only harm the reputation of the plaintiff in the eyes of a substantial minority of respectable persons. *Id..* comment d. The Court is satisfied that defendant Zsofka's statements to the effect that plaintiff unlawfully retained property is sufficiently libelous; hence, proof of special damages is not required. The Court would also note that even if defendant's remarks were slanderous, rather than libelous, special damages would not be required since such remarks impute criminal conduct regarded by public opinion as involving moral turpitude. Restatement (Second) of Torts § 571 comment g (1977). *See, e.g., Jones v. Walsh*, 107 N.H. 379, 380, 222 A.2d 830 (1966) (accusation of embezzlement is slander per se). Thus, plaintiff must only prove actual damages to establish an actionable defamation claim herein, *Gertz v. Welch* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), where actual damages include impairment of reputation, personal humiliation, and mental anguish, Restatement (Second) of Torts § 621 comment b (1977). Plaintiff herein has pleaded as well as provided depositional testimony that she has suffered actual harm, e.g., damage to her reputation. The Court accordingly rejects this last argument by defendants for summary judgment.

## Conclusion

With respect to Court II, the Court denies defendants' motion to dismiss the wrongful discharge claim; with respect to Count III, the Court denies defendants' motion for summary judgment regarding the claim for intentional infliction of emotional distress; and with respect to Count IV, the Court grants the motion to dismiss the defamation claim outlined in paragraph 34 of the complaint, but denies the motion for summary judgment concerning the defamation claim outlined in ˙ paragraph 33 with the exception of those communications made to defendants' attorney and from defendants' attorney to his secretary. Those communications are privileged and not properly subject to a defamation action.

SO ORDERED.