Brenda BROWN

v.

TOWN OF ALLENSTOWN; Gabriel Daneault; Donald Chaput; Gerald Bourcier; Paul Hill.

Civ. No. 86–79–D.

United States District Court, D. New Hampshire.

Nov. 20, 1986.

Jon Meyer, Manchester, N.H., Susan V. Denenberg, Portsmouth, N.H., for plaintiff.

Timothy E. Britain, Concord, N.H., Gerald M. Zelin, Salem, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

Brenda Brown, a former part-time police officer for the Town of Allenstown, has brought this action against the Town of Allenstown ("Allenstown"); Gabriel Daneault, Donald Chaput, and Gerald Bourcier, Selectmen for Allenstown at the time the alleged events took place; and Paul Hill, a former police officer for Allenstown, alleging employment discrimination, violation of her civil rights under color of state law, and various state law claims sounding in tort. All claims are asserted against the named defendants in their official capacities, and claims are asserted against defendants Chaput, Daneault, and Hill in their personal capacities. In a nine-count, 60–paragraph complaint (as amended), plaintiff alleges that defendants deprived her of rights protected by: the First Amendment to the United States Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"); the Civil Rights Act of 1871, 42 U.S.C. § 1983; and state law. Jurisdiction is grounded under 28 U.S.C. §§ 1331 and 1343, and the pendent jurisdiction of this Court.

Briefly, plaintiff's allegations are as follows: (1) she was repeatedly passed over by the Allenstown Board of Selectmen ("Board") for the position of full-time police officer because she was female, despite being more qualified than the successful applicants and despite being recommended by the Police Department; (2) she was sexually harassed by defendant Hill at the time he was an officer of the Police Department; (3) she was suspended by the Board for allegedly criticizing them and for filing a complaint with the New Hampshire Commission for Human Rights; (4) after being reinstated to her position by order of the New Hampshire Superior Court, she was constructively terminated through a pattern of deliberate harassment by a member of the Board; (5) members of the Board attempted to destroy her reputation and emotional well-being by making slanderous and false statements about her; and (6) the actions of defendants Chaput, Daneault, and Hill toward her were malicious, intentional, and undertaken with reckless or callous indifference to her federally protected rights. Plaintiff seeks injunctive relief, monetary damages, prejudgment interest, and her reasonable attorney's fees and expenses.

Three motions and objections thereto are currently before the Court: (1) defendants' motion pursuant to Rule 12(b)(6), Fed.R. Civ.P., for partial dismissal of the complaint;[1] (2) defendants' motion pursuant to Rule 56, Fed.R.Civ.P., for partial summary judgment on Count VI to the extent that it asserts a right to recover against Chaput and Daneault; and (3) plaintiff's motion pursuant to Rule 41, Fed.R.Civ.P., for voluntary dismissal of claims against Bourcier in his official capacity. Resolution of the legal issues raised by these motions will be decided on the documents as filed.[2]

*Applicable Standards of Law*

A motion to dismiss based on Rule 12(b)(6), Fed.R.Civ.P., is viewed with disfavor because, rather than a dismissal based on pleadings, the objective of our system of justice is that each litigant obtain a determination on the merits. *Intake Water Co. v. Yellowstone River Compact Comm'n,* 590 F.Supp. 293, 296 (D.Mont.1983), *aff'd* 769 F.2d 568 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986). Consequently, in considering a motion to dismiss, the nonmoving party is afforded nearly every benefit of the doubt. "[T]he material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove." *Chasan v. Village Dist. of Eastman,* 572 F.Supp. 578, 579 (D.N.H.1983) (citations omitted), *aff'd without opinion,* 745 F.2d 43 (1st Cir.1984). The issue the Court must address is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *V.S.H. Realty, Inc. v. Texaco, Inc.,* 757 F.2d 411, 414 (1st Cir.1985) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

In reviewing motions to dismiss the Court's consideration is limited to the allegations of the complaint itself. *Litton Indus., Inc. v. Colon,* 587 F.2d 70, 74 (1st Cir.1978). However, in the instant case matters outside the pleadings have been presented to the Court with regard to the motions to dismiss in Counts I and III and the motion to dismiss the official-capacity claims against Bourcier and Hill. As all parties have had reasonable opportunity to present pertinent material, the Court will deal with these motions under Rule 56.[3]

Under Rule 56(c), Fed.R.Civ.P., summary judgment "shall be rendered forthwith if

---

**1.** Defendants seek to dismiss a portion of Count I, all of Counts II, III, IV, and VII, the claims for punitive and enhanced damages, and the claims against Bourcier and Hill for actions taken in their official capacity.

**2.** *See* Rule 11(g), Rules of the United States District Court for the District of New Hampshire.

**3.** *See* Rule 12(b), Fed.R.Civ.P.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must affirmatively demonstrate that there is no genuine, relevant factual issue, and the Court must look at the record in the light most favorable to the party opposing the motion and indulge all inferences favorable to that opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *General Office Products Corp. v. M.R. Berlin Co., Inc.*, 750 F.2d 1, 2 (1st Cir. 1984). Summary judgment must be denied where there remains the "slightest doubt" as to any material fact. *United States v. Del Monte De Puerto Rico, Inc.*, 586 F.2d 870, 872 (1st Cir.1978).

The Court is able to render a ruling on Counts II, IV, VII, and the motion to dismiss claims for punitive and enhanced damages on the standard for a motion to dismiss; with regard to Counts I, III, VI, and the motion to dismiss official-capacity claims against Bourcier and Hill, the Court will follow the summary judgment standard.

### Rulings of Law
#### Count I—The Timeliness Issue

Defendants have moved to dismiss Count I[4] to the extent that Count I asserts a right to recover for actions which were not timely filed with appropriate administrative agencies. Asserting that such claims are barred, defendants seek dismissal on the ground that plaintiff has failed to state a claim upon which relief can be granted. Material outside the pleadings has been presented for consideration; therefore, the Court applies the standards applicable to a motion for summary judgment.

Both federal and New Hampshire law require employment discrimination claims to be filed within 180 days after the alleged

unlawful act. 42 U.S.C. § 2000e–5(e); RSA 354–A:9 III. Plaintiff filed her first complaint with an administrative agency on July 5, 1984. Therefore, defendants contend that their alleged misconduct prior to January 7, 1984, is beyond the claims limitations period and not actionable.

Plaintiff contends that her claims based on defendants' unlawful conduct occurring prior to January 7, 1984, are not barred because the acts were part of a "continuing violation" of her rights and, as such, her filing was timely with regard to all discriminatory acts falling within the continuing violation alleged. Alternatively, plaintiff asserts that timely filing is not a jurisdictional prerequisite, but, even if treated as such, is subject to waiver, estoppel, and equitable tolling.

Plaintiff's "continuing violation" theory is recognized in this circuit, *see Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014 (1st Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980), and in other circuits, *see* Annotation, *Time Requirements for Civil Action for Violation of Equal Employment Opportunities Provisions Under § 706 of Civil Rights Act of 1964 (42 U.S.C. § 2000e–5)*, 4 A.L.R.Fed. 833 § 9 (1970 & Supp.1985). In *Goldman*, the Court of Appeals for the First Circuit explained the nature and elements of a continuing violation:

Courts have held that if a Title VII or ADEA violation is of a continuing nature, the charge of discrimination filed with the appropriate agency may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life thereof or within the statutory period (*e.g.*, 180 days) which commences upon the violation's termination.

To state such a continuing violation, however, a complaint must indicate that not only the injury, but the discrimination, is in fact ongoing.

---

**4.** Count I includes claims brought pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the New Hampshire Human Rights Act, New Hampshire Revised Statutes Annotated ("RSA") 354–A, *et seq.*

*Goldman, supra,* 607 F.2d at 1018 (citations omitted).

The complaint states that Allenstown has hired only one other female special police officer aside from plaintiff and has never employed a full-time female officer. The complaint further alleges that Selectmen Daneault and Chaput made statements that Allenstown was not ready to hire a full-time woman police officer and that women were not qualified as officers. Throughout the complaint plaintiff alleges and infers a past and ongoing pattern of sexual discrimination. Furthermore, plaintiff testified at her deposition that Chief of Police Connor made an equivocal statement which indicates that a genuine issue of material fact exists as to whether Allenstown's failure to hire the plaintiff was improperly motivated.[5]

■ A repeated refusal to hire an individual does not per se establish a continuing violation. *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 309, 74 L.Ed.2d 283 (1982). However, if the plaintiff can show that a discriminatory hiring policy existed which had some impact on her within the limitation period, then the continuing violation doctrine would apply and would preserve as causes of action those claims which would otherwise be barred as falling outside the statutorily prescribed time period. In that instance plaintiff might be entitled to relief on the claims on which defendants seek judgment.

■ Accordingly, the Court holds that doubt exists as to the material issue of whether defendants engaged in a continuing violation and plaintiff is entitled to offer evidence to support her claim. As summary judgment is improper on this basis, the Court need not address the merits of defendants' other arguments regarding the effect of the date plaintiff filed her claims. Defendants' motion is denied as to Count I.

*Count II—Claims Under 42 U.S.C. § 1983*

Defendants seek to dismiss Count II [6] on the ground that Title VII provides the exclusive judicial remedy for claims of sex-based employment discrimination, preempting 42 U.S.C. § 1983.[7]

■ Section 1983 does not, standing alone, establish substantive rights; it is a remedial statute which creates a remedy when federally protected constitutional or statutory rights are violated. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979); *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Therefore, in order to state a cognizable § 1983 claim, the pleading must identify the federally protected right. As the Supreme Court has stated, "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman, supra,* 441 U.S. at 617, 99 S.Ct. at 1916.

■ Under modern procedural rules, pleadings are to be construed so as to do

---

**5.** Chief of Police Connor is alleged to have stated,

> I will give you an application. We have a woman now who works for the ambulance as a volunteer and does some typing and the selectmen will not let her in a cruiser, and she looks like a man. I can't see them letting you in a cruiser, but you can fill out the application.

Deposition of plaintiff June 27, 1986, p. 26, A. 175.

**6.** Count II in its entirety reads as follows:

> The action of defendants Allenstown, Chaput, Daneault and Bourcier in refusing under color of law to appoint the plaintiff to either part-time or full-time positions with the Allenstown Police Department on account of her sex constitutes a violation of her individual rights under 42 U.S.C. § 1983.

**7.** 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

substantial justice, Rule 8(f), Fed.R.Civ.P.; *DeCosta v. CBS, Inc.,* 520 F.2d 499, 510 (1st Cir.1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). However, under any construction, plaintiff's pleading of Count II (*see supra,* note 6) appears to do precisely that which *Chapman* admonishes claimants not to do. Ours being an adversary system of justice, and plaintiff being assisted by able counsel, the Court is unwilling to reform Count II of the complaint so that it states a claim upon which relief may be granted. Absent the incorporation by reference of the the preceding alleged statutory violation of Title VII contained in Count I, and absent any allegation that other statutory or constitutional rights have been violated, Count II must be dismissed as being deficient on its face. Defendants' motion is granted as to Count II.

*Count III—Sex Discrimination Claims Based on Failure to Submit Employment Application*

The gravamen of Count III is that defendant Hill's alleged failure to forward the plaintiff's employment application because she refused his sexual advances violates Title VII [8] and the New Hampshire Human Rights Act.[9] Defendants seek to dismiss Count III in its entirety, claiming that: (1) the plaintiff's claim is time barred because she failed to make a timely administrative filing; (2) the claim should be dismissed because plaintiff failed to allege a causal connection between Hill's conduct and her employment opportunities with Allenstown; and (3) plaintiff has failed to state a claim because she did not allege that Hill's actions were done in furtherance of his official duties or constituted anything more than an isolated action of a personal nature.[10]

Hill's actions are alleged to have occurred in November 1982. Defendants argue that plaintiff's claim on these actions is barred by the 180–day filing limitations period because she failed to file an administrative complaint regarding the actions until July 5, 1984. However, if there is a basis for finding that the mishandling of her application took place and that the plaintiff was actively misled or deceived as to that fact—that the facts which would have supported a cause of action were unknown to her through no fault of her own though she was reasonably prudent with regard to her rights—then the filing limitations period may be equitably tolled, modifying the time period during which her claim may be brought. *Zipes v. TWA, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Earnhardt v. Puerto Rico,* 691 F.2d 69, 71 (1st Cir.1982); *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 929–31 (5th Cir.1975).

The pleadings do not allege that Hill openly or publicly mishandled plaintiff's application or that he confronted her with the alleged fact that he had failed to forward it. Two affidavits filed by plaintiff support her claim that she was ignorant of any alleged discrimination at this stage of events. Consequently, it is possible to infer that the plaintiff was unable to discern

---

**8.** 42 U.S.C. § 2000e–2(a) provides in pertinent part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

**9.** RSA 354–A:8 provides in pertinent part:

It shall be an unlawful discriminatory practice:

I. For an employer, because of the age, sex, race, color, marital status, physical or mental handicap, religious creed, or national origin of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

**10.** Although defendants have framed their motion under Rule 12(b)(6), Fed.R.Civ.P, outside materials have been presented and argued by both parties. Accordingly, the Court rules on defendants' motion pursuant to Rule 56. *See* note 3, *supra.*

any unlawful action on Hill's part until just prior to the time she filed her administrative complaints. As doubt exists as to whether the plaintiff was misled regarding Hill's treatment of her application, summary judgment must be denied.

■ Defendants have also asserted that Count III should be dismissed because the plaintiff failed to allege a causal connection between Hill's alleged misconduct and her employment opportunities with Allenstown. This argument is misplaced as it goes to the issue of damages, not liability. Mishandling a job application based on an applicant's sex is clearly prohibited under both federal and New Hampshire law. *See* 29 C.F.R. § 1607.3(A); *King v. New Hampshire Dept. of Resources,* 420 F.Supp. 1317, 1326–27 (D.N.H.1976), *aff'd,* 562 F.2d 80 (1st Cir.1977); *Scarborough v. Arnold,* 117 N.H. 803, 808–09, 379 A.2d 790 (1977). Whether in fact the employment application was mishandled is an issue of fact which must be resolved at trial.

Defendants also argue that plaintiff's claim fails because her complaint does not allege that Hill's mishandling of her application was allowed, approved, or condoned as a matter of Allenstown policy or committed in furtherance of Hill's duties as an Allenstown police officer. However, the complaint states that plaintiff's employment application was submitted to Hill while he was acting in his official capacity as desk officer of the police department. As such, Hill was clearly acting as an agent of his employer. If there was some benefit to or acquiescence by Allenstown arising from Hill's alleged failure to properly forward plaintiff's employment application, then Hill could be found to be acting as Allenstown's agent as to the mishandling of the application and, conse-

quently, Title VII and RSA 354–A would impose liability on Allenstown for Hill's actions. 42 U.S.C. § 2000e(b); *Meritor Sav. Bank, FSB v. Vinson,* —— U.S. ——, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (citing Restatement (Second) of Agency §§ 219–237 (1958)); *Scarborough v. Arnold, supra,* 117 N.H. at 807, 379 A.2d 790 (when interpreting RSA 354–A, New Hampshire will look to federal case law interpreting analogous provisions of Title VII). If, however, the converse was true (*i.e.,* there was no benefit to Hill's employer, Hill's alleged conduct had no relationship to the nature of his employment, and there was no acquiescence in Hill's alleged actions by his employer), then Hill's action would constitute a personal tort not actionable under either Title VII or RSA 354–A. *Tomkins v. Public Serv. Elec. & Gas Co.,* 568 F.2d 1044, 1048–49 (3d Cir.1977).

■ As doubt exists as to whether Hill was acting within the scope of his agency, summary judgment is inappropriate. Defendants' motion is denied as to Count III.

### Count IV—First Amendment Claims

Defendants seek to dismiss Count IV[11] on the basis that it is duplicative for seeking to recover, under § 1983, for claims arising out of the same conduct which forms the basis for the Title VII claim asserted in Count V.[12] Defendants' Reply Memorandum of May 7, 1986, at 4. Defendants' assertions notwithstanding, the two claims are not duplicative.

■ Count IV—the First Amendment claim—asserts that the defendants suspended plaintiff for filing an administrative complaint *and* for making statements to the press. On the other hand, Count V—

---

11. Count IV states:
   The action of defendants Allenstown, Chaput, and Daneault in suspending the plaintiff from her position as part-time police officer with the Town of Allenstown on account of her Complaint filed with the New Hampshire Human Rights Commission and her alleged statements to the press constitute a denial of her First Amendment rights as guaranteed by 42 U.S.C. § 1983.

12. Count V in its entirety states:
   The action of defendants Chaput and Daneault in suspending plaintiff because of her filing a complaint with the New Hampshire Commission for Human Rights and the Equal Employment Opportunity Commission violated her rights under 42 U.S.C. § 2000(e)–3 and RSA 354–A:8 (VII).

the Title VII and EEOC claims—asserts that plaintiff was retaliatorily suspended for filing an administrative complaint; Count V does not base its statutory claims in any way on plaintiff's alleged statements to the press. Whether the plaintiff made statements to the press and, if so, whether those statements are subject to First Amendment protection, are issues of material fact which are not only unresolved but are also not pertinent to Count V.

Furthermore, defendants' argument that Title VII preempts plaintiff's First Amendment claim is misconceived. Defendants argue that if the same alleged conduct forms the basis for concurrent Title VII and § 1983 claims, the Title VII remedy preempts § 1983 because otherwise a claimant would be able to frustrate the detailed administrative scheme of Title VII. Purportedly in support of this proposition, defendants rely on *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199 (6th Cir. 1984); *Tafoya v. Adams*, 612 F.Supp. 1097 (D.Colo.1985); and *Appling v. City of Brockton*, 649 F.Supp. 258 (D.Mass.1986). However, in actuality those cases hold that preemption becomes an issue only when the § 1983 cause of action arises out of the violation of Title VII itself; that is, when the § 1983 claim is not based on a constitutional or statutory right independent of Title VII. *Day, supra*, 749 F.2d at 1204; *Tafoya, supra*, 612 F.Supp. at 1102–03 (and cases cited therein); *Appling, supra*, slip op. at 4 (citing *Day* and *LeBoeuf v. Ramsey*, 503 F.Supp. 747, 754 (D.Mass.1980)). *Cf. Curran v. Portland Superintending School Comm.*, 435 F.Supp. 1063, 1082 (D.Me.1977) ("The Court holds that Title VII does not preempt a separate and independent cause of action under Section 1983.")

In the instant case, Count IV asserts a basis for plaintiff's § 1983 claim which is independent of Title VII. Therefore, the Court holds that plaintiff's Count V Title VII claims do not preempt plaintiff's Count IV First Amendment claims. Defendants' motion is denied as to Count IV.

## Count VII—Claims for Intentional Infliction of Emotional Distress

Plaintiff alleges that following her reinstatement to the Allenstown police force in January 1985 pursuant to court order, defendant Daneault intentionally harassed her by following her while she was on duty and by placing her under surveillance to the extent that it impeded her performance and forced her resignation. Complaint, ¶¶ 43–46. Based on these allegations, Count VII asserts a cause of action for the tort of intentional infliction of emotional distress. Defendants have moved to dismiss, arguing that New Hampshire does not recognize such a cause of action and, even if it did, the actions complained of by plaintiff are insufficient to constitute the tort.

Defendants' argument that New Hampshire does not recognize the tort of intentional infliction of emotional distress was recently considered and rejected by this Court in *Chamberlin v. 101 Realty, Inc.*, 626 F.Supp. 865, 868–69 (D.N.H.1985). Defendants further argue that there must be manifestation of distress by physical illness or bodily harm. However, in *Chamberlin* this Court held that the elements of the cause of action were outlined in the Restatement (Second) of Torts § 46 (1965), *id.* at 869, and comment k to that section explicitly states: "The rule stated is not, however, limited to cases where there has been bodily harm; and if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm." Restatement (Second) of Torts § 46 comment k (1965).

Finally, defendants argue that the actions alleged are not sufficiently outrageous to fall within the parameters of the tort. Upon review of the pleadings the Court finds that, taking the facts alleged in the complaint as admitted, the defendants' misconduct could reasonably be regarded as so extreme and outrageous as to permit recovery. "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been

sufficiently extreme and outrageous to result in liability." *Id.* at comment h. Defendants' motion to dismiss is denied.

*Claims for Punitive Damages*

Part "C" of plaintiff's prayer for relief seeks punitive or enhanced compensatory damages from Chaput, Daneault, and Hill. Defendants seek to dismiss on the basis that plaintiff has failed to allege the prerequisite conduct to support such type of relief.

■■■■■ Punitive or enhanced compensatory damages of the type sought here are not available under Title VII. *DeGrace v. Rumsfeld,* 614 F.2d 796, 808 (1st Cir.1980). Similarly, such damages are not available under RSA 354–A. *See Scarborough v. Arnold, supra,* 117 N.H. at 807, 379 A.2d 790. Punitive damages are also precluded under § 1983 against the Town of Allenstown. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Because damages may be awarded against a defendant in his or her official capacity only if recoverable against the government entity itself, *Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982), punitive damages may not be awarded against defendants Chaput, Daneault, and Hill in their *official* capacities as agents of Allenstown on plaintiff's § 1983 claim. *See Piper v. Town of Derry,* No. 84–284–D, slip op. at 6–7 (D.N.H. Dec. 31, 1984) [Available on WESTLAW, DCTU database]. However, under § 1983 punitive damages may be sought from Chaput, Daneault, and Hill in their *personal* capacities if their conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 35–36, 56, 103 S.Ct. 1625, 1629, 1640, 75 L.Ed.2d 632 (1983). Regarding plaintiff's personal-capacity state law claims against Chaput, Daneault, and Hill, New Hampshire does not recognize the remedy of punitive damages, *Vratsenes v. N.H. Auto, Inc.,* 112 N.H. 71, 73,

289 A.2d 66 (1972), but does recognize the remedy of enhanced compensatory damages. "[W]hen the act involved is wanton, malicious, or oppressive, the compensatory damages may reflect the aggravating circumstances." *Id.; Johnsen v. Fernald,* 120 N.H. 440, 441, 416 A.2d 1367 (1980).

Plaintiff's complaint alleges facts which, construed in the light most favorable to her and taken as admitted, indicate that Chaput and Daneault violated plaintiff's First Amendment rights by suspending her from employment for making statements to the press (Count IV), that Hill mishandled plaintiff's employment application for refusing to submit to his sexual advances (Count III), that Hill intentionally assaulted her (Count VIII), and that Chaput, Daneault, and Hill slandered plaintiff, knowing or being in a position to know that their statements were false (Count VI). If these allegations are proven at trial, a jury conceivably could find grounds to grant punitive damages on the federal claim, enhanced compensatory damages on the state claims, or both.

■■■■■ Accordingly, the Court rules that defendants' motion to dismiss Part C of plaintiff's prayer for relief is granted in part and denied in part. Defendants' motion is granted (i.e., plaintiff may not recover punitive or enhanced compensatory damages) as to causes of action under Title VII and RSA 354–A (Counts I, III, V). Defendants' motion is denied (i.e., plaintiff may recover punitive or enhanced compensatory damages) as to her First Amendment claim (Count IV) and her pendent state law claims (Counts VI, VII, and VIII).

*Official-Capacity Claims Against Bourcier and Hill*

Defendants seek to dismiss plaintiff's official-capacity claims against Bourcier and Hill on the basis that neither individual is presently an official of the Town of Allenstown.[13] Purportedly, Bourcier ceased serv-

---

**13.** The information that Bourcier and Hill are no longer officials of Allenstown comes from material outside the pleadings (i.e., defendants'

answer and memoranda filed by both parties). Consequently, the Court considers this motion

ing as an Allenstown Selectman in March 1985, and Hill ceased being employed as an Allenstown police officer on December 16, 1983. Defendants' Answer at ¶¶ 7, 8; Defendants' Memorandum of March 28, 1986, at 17; Plaintiff's Memorandum of April 30, 1986, at 14–15; Defendants' Memorandum of May 7, 1986, at 8. Plaintiff has sued Bourcier in his official capacity only; however, she has sued Hill in both his official *and* personal capacities.[14]

Rule 25(d)(1), Fed.R.Civ.P., states: "When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party." Regarding such substitution, the Supreme Court recently held that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham, supra* note 14, 105 S.Ct. at 3105 & n. 11 (citations omitted) (emphasis in original).

██ Accordingly, the Court holds that, at whatever point in time Bourcier and Hill ceased to be officials of the Town of Allenstown, by operation of law they ceased to be parties to this lawsuit in their official capacities and their successors were *automatically* substituted in their place. Rule 25(d)(1), Fed.R.Civ.P.; *see also Cabrera v. Municipality of Bayamon,* 622 F.2d 4, 6 (1st Cir.1980) (mayor entering case by replacing predecessor in office in substitution pursuant to Rule 25(d)(1) where no allega-

tions of extraofficial wrongdoing properly found not a party in his personal capacity). Defendants' motion is granted.[15]

### Plaintiff's Motion for Voluntary Dismissal

Pursuant to Rule 41(a)(2), Fed.R.Civ.P., plaintiff has moved for voluntary dismissal of her official-capacity claims against Bourcier. Given that the Court has already granted defendants' motion for summary judgment with regard to official-capacity claims against Bourcier, the issue is moot and the Court need not rule on plaintiff's motion.

### Motion for Summary Judgment—Slander Claims

Count VI asserts a pendent state law claim for slander against Chaput, Daneault, and Hill.[16] Defendants move for partial summary judgment in their favor pursuant to Rule 56(b), Fed.R.Civ.P., to the extent that Count VI asserts a right to recover against Chaput and Daneault. Defendants argue (1) that plaintiff's claim fails as a matter of law because a requisite element of the tort of slander—publication—is absent, and (2) that there are no issues of material fact because the plaintiff on deposition could not personally recall specific occasions on which Chaput or Daneault made defamatory statements about her.

Plaintiff's first argument centers around a letter of suspension dated December 17, 1984, which was sent to plaintiff and signed by Chaput and Daneault.[17] Defendants argue that even if the letter's contents are found to be defamatory and non-privileged, because the letter was sent to plain-

---

as one for summary judgment. *See supra* note 3.

**14.** "Personal-capacity actions are sometimes referred to as individual-capacity actions." *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105 n. 10, 87 L.Ed.2d 114 (1985).

**15.** Such holding, of course, does not release Hill for any potential liability he may have for causes of action asserted against him in his *personal* capacity. *See Kentucky v. Graham, supra,* 105 S.Ct. at 3105–06.

**16.** The speaking of defamatory words is slander, whereas bringing written or printed words to the attention of a third party is libel. Restatement (Second) of Torts § 568 (1977). Count VI asserts only a cause of action for slander. In actuality, the alleged actions of defendants as framed by the complaint constitute both slander *and* libel.

**17.** *See, supra* note 16, as to inaccurate use of term "slander" in Count VI.

tiff in a sealed envelope and the contents allegedly not disclosed to third parties prior to her receipt of the letter, publication did not occur. The issue with regard to establishing liability, however, is not *when* the letter was disclosed; the issue is *whether* the letter was disclosed.

 Publication of defamatory matter is "its communication intentionally or by a negligent act to one other than the person defamed." Restatement (Second) of Torts § 577 (1977). Publication is essential to liability, *id.* at comment a; *see also id.* at § 558 (elements of cause of action for defamation), and publication even to one person other than the plaintiff is actionable. *Duchesnaye v. Munro Enter., Inc.*, 125 N.H. 244, 253, 480 A.2d 123 (1984).

Information presented to the Court indicates that the suspension letter contains a "cc" to Chief Connor. In addition, the letter states it "will be made part of your personnel file." Complaint, Exhibit 2. Seemingly, at the time they sent plaintiff the letter the defendants intended to disclose its contents. Whether they did so is a material fact which is, at this point, unclear. As such, summary judgment on the issue of publication is inappropriate.

Defendants also argue that relevant portions of deposition testimony show that at the time she was deposed plaintiff could not recall Chaput or Daneault initiating or disseminating defamatory statements about her. However, whether plaintiff's deposition testimony was intended to include the letter of December 17 or other written documents is unclear. Furthermore, discovery is incomplete. It is possible that the ambiguous deposition might be resolved to show that plaintiff was *not* referring to written documents or that other evidence might support plaintiff's allegations. Plaintiff's deposition testimony notwithstanding, doubt exists as to the material fact of whether Chaput or Daneault (or both) initiated or disseminated slanderous or libelous statements about the plaintiff. As genuine issues of material fact exist as to whether publication occurred and as to whether defamatory statements were initiated or disseminated, defendants' motion for summary judgment must be denied.

### Conclusion

To summarize, defendants' motion to dismiss a limited portion of Count I is denied. Defendants' motion to dismiss Count II is granted. Defendants' motion to dismiss is denied as to Counts III, IV, and VII. Defendants' motion to dismiss Part C of plaintiff's prayer for relief is granted in part and denied in part. Defendants' motion to dismiss the official-capacity claims against Bourcier and Hill is granted.

Plaintiff's motion for voluntary dismissal of her official-capacity claim against Bourcier is moot. Defendants' motion for partial summary judgment as to Count VI is denied.

SO ORDERED.