Coos
No. 82-520

ROSAIRE DUCHESNAYE

v.

MUNRO ENTERPRISES, INC.

July 26, 1984

246

*Edward J. Reichert,* of Gorham, by brief and orally, for the plaintiff.

*Orr & Reno P.A.*, of Concord (*William L. Chapman* on the brief and orally), for the defendant.

SOUTER, J.  In this action the plaintiff alleged that the defendant had libeled him by statements contained in a newspaper report and an editorial. The Superior Court (*Pappagianis*, J.) entered summary judgment for the defendant with respect to the news story, and the action was tried to the Court (*Dunfey*, C.J.) on the claim that the editorial was defamatory. The court returned a verdict for the plaintiff, and the defendant now appeals on its exceptions to certain of the trial court's rulings in support of the finding of liability. We affirm.

The record indicates that in April 1975 the Berlin District Court found the plaintiff guilty of making telephone calls with intent to annoy another, in violation of RSA 644:4. Soon thereafter, Robert Ring, the local manager of the telephone company, met with Howard James and Joe Myerson, the general manager and the editor, respectively, of the defendant's newspaper, *The Berlin Reporter*. Mr. Ring asked them for publicity designed to discourage improper use of the telephone, and he told them about the plaintiff's recent conviction.

On inquiry to the Berlin Police Department, Mr. Myerson learned that the plaintiff had made no statements during his annoying calls, and he told this to Mr. James. Mr. Myerson then wrote a front-page story about the plaintiff's conviction. The story identified the plaintiff as a 56-year-old Berlin man and was accurate on matters relevant to the present action. The same issue of the newspaper contained Mr. James' editorial on the subject of "obscene and harassing phone calls." He wrote that such calls were often from children, but he went on to observe that "others who make these calls are unstable persons who need help. In fact, some are in their thirties, forties and even fifties. A few days ago a 56-year-old Berlin man was arrested and convicted in District Court of making these calls."

In limiting summary judgment for the defendant to the claim based upon the news story, the superior court found that it was reasonably possible to read the editorial together with the news story as defamatory in two respects. It could be understood to describe the plaintiff as needing psychiatric help for instability, and it could be read to imply that the plaintiff had made obscene telephone calls. At trial the plaintiff sought to hold the defendant liable by proving that readers of the editorial had in fact understood it in these defamatory senses. *See Thomson v. Cash*, 119 N.H. 371, 375, 402 A.2d 651, 653–54 (1979).

The defendant's first assignments of error rest on the rule that expressions of opinion are not actionable as such. "'However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.'" *Pease v. Telegraph Publishing Company, Inc.*, 121 N.H. 62, 65, 426 A.2d 463, 465 (1981) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974)). The defendant argues in effect that the court could have found only that the editorial had been an expression of opinion, and that the record is therefore devoid of any basis for finding liability.

We agree that the editorial reference to "unstable persons who need help" could be read merely as an expression of the opinion that a person who makes annoying or obscene calls is unstable and in need of psychiatric help. We also note that the plaintiff's only witness to testify about his actual understanding of the editorial agreed on cross-examination that it expressed the "opinion" "that people who made these calls needed help." There is language in the trial court's findings indicating that the court found the quoted language to be opinion and also found the opinion actionable.

Before determining whether this was reversible error, however, we must answer two questions: did the court find the ostensible opinion had been understood to imply defamatory facts, and did the court properly find the editorial contained factual and defamatory material in addition to the opinion?

It is axiomatic that "[w]ords alleged to be defamatory must be read in the context of the publication taken as a whole." *Morrissette v. Cowette*, 122 N.H. 731, 733, 449 A.2d 1221, 1222 (1982). In such context, a statement in the form of an opinion may be read to imply defamatory facts, and it is actionable if it is actually understood that way. *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), *cert. denied*, 434 U.S. 834 (1977); RESTATEMENT (SECOND) OF TORTS § 566 (1977); *see Morrissette v. Cowette, supra* at 734, 449 A.2d at 1222.

This case went to trial on only two possibilities of libel, that the plaintiff needed psychiatric help and that he made obscene calls. Thus, if the reference to psychiatric help was opinion, it could have had a libelous implication only if it implied, or was a step in the process of implying, that the defendant had made obscene calls.

There was no evidence, however, that anyone so understood the reference to needing help. Hence, the record is insufficient to support a finding of liability based on the defamatory implication of an ostensible statement of opinion.

■ We next consider whether the trial court based liability on any other ground than opinion. We find that it did. As the court found on the motion for summary judgment, a series of factual statements in the editorial could have been read as indicating that the plaintiff had made obscene calls. The plaintiff had been identified in the front-page news story as a 56-year-old Berlin man; the editorial stated as a fact that a "56-year-old Berlin man" had been convicted of making "these" "obscene and harassing" calls. The same witness who testified that he had understood the reference to sickness as opinion, just as clearly testified that he had understood the editorial to imply that the plaintiff had made obscene calls. This was a sufficient basis for the trial court's finding that the witness "understood the editorial to be using the plaintiff as an example of a sick person *who makes obscene phone calls.*" (Emphasis added.) It is clear that the trial court thus rested liability properly on the finding that the editorial had been understood to identify the plaintiff as an obscene caller, though the court may also erroneously have considered the opinion as an alternative ground of liability.

The defendant next challenges the finding of liability on the ground that the trial court did not find that the defendant had been sufficiently at fault in publishing the defamatory statements. The defendant claims that there was no evidence of its negligence, that the trial court's finding of negligence was erroneous, and that the finding of liability required proof that the defendant intended the statements to be understood in a false and defamatory sense. These claims are without merit.

■ Liability in defamation actions has traditionally rested upon the defendant's intention to communicate the defamatory statement to someone other than the plaintiff, or at least upon negligent responsibility for such communication. But it was also the general rule at common law that if the defendant acted intentionally or negligently in communicating a statement, he was strictly liable for its defamatory content. The law, in short, distinguished between communicating, on the one hand, and investigating facts and composing statements on the other. It required proof of fault in communication, but not in investigation or composition. W. PROSSER, TORTS § 113, at 771 (4th ed. 1971) (hereinafter "PROSSER"); RESTATEMENT (SECOND) of TORTS § 580B, comment b (1977); *see Pallet v. Sargent,* 36 N.H. 496, 501 (1858).

■■ *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964), abrogated this rule of strict liability for the defamatory content of statements about public officials, and *Curtis Publishing Co. v. Butts,* 388 U.S. 130 (1967), did the same for defamation of public figures.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), swept away the last vestige of the old rule, by holding that the States may not impose civil liability without fault for defamation of private individuals like the present plaintiff. *Gertz* left it to the States to set the appropriate standard of fault in cases without claims of imputed or punitive damages, and in *McCusker v. Valley News*, 121 N.H. 258, 260, 428 A.2d 493, 494, *cert. denied*, 454 U.S. 1017 (1981), this court adopted a standard of negligence. The present plaintiff therefore had the burden to prove that it was through lack of reasonable care that the defendant prepared statements indicating that the plaintiff had made obscene calls.

There was evidence from which a reasonable trier of fact could find that the defendant had failed to exercise reasonable care for the accuracy of the statements. The parties stipulated that Mr. Myerson had inquired about the evidence against the plaintiff in the district court, and Mr. James testified that he had learned from Mr. Myerson that the plaintiff had said nothing during his harassing calls. Mr. James said that Mr. Myerson had reviewed the editorial before it was published.

■ This evidence was an ample basis for the trial court's conclusion that "a reasonable person, who knew that the plaintiff was . . . convicted of two annoying calls, which were not obscene, would not have published such statements." This finding of fault was sufficient under the standards of *McCusker v. Valley News supra*.

It is true, as the defendant claims, that some of the trial court's other findings of fact do not appear to reflect Mr. James' testimony. The court specifically found that the writer of the editorial, Mr. James, had not made factual inquiries about the testimony at the district court trial, and that other inquiries were only "general." The court concluded that the defendant "should have known" that the plaintiff's calls were silent, not obscene.

■ If these findings are thus subject to argument based on uncontradicted evidence, that argument cannot vitiate the court's ultimate finding of negligence. The trial court clearly found a breach of the duty to use reasonable care, either on the assumption that the defendant's employees did not know the facts or on the assumption that they did. Support for the finding of negligence is strongest on the defendant's own view of the facts, that both its editor and its general manager knew the plaintiff had made no obscene call but nonetheless wrote an editorial indicating that he had.

■ The foregoing discussion of the *McCusker* standard of negligence also answers the defendant's claim that liability in this State

must rest on proof that the defendant intended its statements to be understood in a false and defamatory sense. The defendant has cited early cases supporting his position. *Smart v. Blanchard*, 42 N.H. 137 (1860); *Shaw v. Shaw*, 49 N.H. 533 (1870). So far as they may be read to require proof of intentional falsity and defamation on the issue of liability, they were overruled by *McCusker v. Valley News supra*. We caution that we are not dealing here with claims for presumed or punitive damages, which could not be predicated on mere negligence. *Gertz v. Robert Welch, Inc. supra*. We note also that the most recent case cited by the defendant for the requirement of intentionality, *Thomson v. Cash*, 119 N.H. 371, 402 A.2d 651 (1979), not only preceded *McCusker* but involved a public official's action for defamation, requiring proof of intentional falsehood or reckless disregard of truth. *McCusker v. Valley News supra; New York Times Co. v. Sullivan supra*.

In support of his next claim of error, the defendant argues that as a matter of law there was insufficient evidence that the editorial was actually understood in the false and defamatory sense as referring to the plaintiff. The plaintiff testified over objection about remarks others made after the editorial had circulated, and the plaintiff's son, Norman, also referred to the reactions of others. We agree with the defendant's assertion that the only competent testimony about the actual understanding of readers was Norman's testimony about his own understanding. The trial court accepted his testimony that he read the editorial to imply that the plaintiff was sick and had made obscene calls.

The defendant argues that the plaintiff must prove that a "substantial and respectable group, even though it . . . be a small minority" understood the language of the editorial to refer to him. He claims that evidence that one witness so understood the editorial is insufficient to carry that burden. We reject this argument, because it confuses the definition of defamatory language with the quantum of evidence necessary to prove that the language was actually understood in a defamatory sense.

■■ ■■ To be defamatory, language "must tend to lower the plaintiff 'in the esteem of any substantial and respectable group, even though it may be quite a small minority.'" *Thomson v. Cash*, 119 N.H. at 373, 402 A.2d at 653 (quoting PROSSER § 111, at 743); RESTATEMENT (SECOND) OF TORTS § 559 (1977). The reference to the esteem of a group is a criterion for identifying the kinds of statements that can be defamatory. It is a standard to be applied by the court on motion for dismissal or summary judgment, to determine whether the language in question could reasonably have been read

to defame the plaintiff. *Thomson v. Cash supra;* RESTATEMENT (SECOND) OF TORTS § 614 (1977); PROSSER § 111, at 747–48. The superior court applied this standard in ruling on the motion for summary judgment.

■■ Once the court has made this determination about possible meaning and application, a jury or court as finder of fact must determine whether the language was actually communicated and understood in the possible defamatory sense. These two findings are commonly spoken of together as responding to the requirement of publication.

■■ The plaintiff need not prove publication to a group, however. Publication to one person other than the plaintiff is actionable. RESTATEMENT (SECOND) OF TORTS § 577, comments (b) and (c) (1977); PROSSER § 113; *see Thomson v. Cash supra.* That one person may be a member of the plaintiff's family. PROSSER § 113, at 767. The closeness of a witness' relationship to the plaintiff may affect the weight of his testimony, but it does not affect its evidentiary competence. In summary, defamatory meaning is determined by reference to the thinking of a group, but defamatory publication may be to any one third person.

■■■■ The defendant's final contention is that the trial court erred in failing to find the publication conditionally privileged under the rule described in such cases as *Chagnon v. Union-Leader Corp.*, 103 N.H. 426, 174 A.2d 825 (1961), *cert. denied*, 369 U.S. 830 (1962): "A conditional privilege . . . is established if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of its truth." *Id.* at 438, 174 A.2d at 833. The burden to prove the existence of such a privilege was on the defendant. *Id.* Once the defendant had proven it, the plaintiff could defeat the privilege only by proving that the defendant had acted with malice. *Id.; Baer v. Rosenblatt*, 106 N.H. 26, 203 A.2d 773 (1964), *rev'd on other grounds*, 383 U.S. 75 (1966).

■■ This conditional privilege had its genesis in the days before *McCusker v. Valley News supra* mitigated the law for defendants in defamation cases by requiring private figures to prove at least negligent fault as an element establishing liability. A finding of such negligence, however, is necessarily inconsistent with one element of the traditional conditional privilege, reasonable grounds for believing that the statement was true. *Compare Pickering v. Frink*, 123 N.H. 326, 461 A.2d 117 (1983).

We have already discussed the trial court's findings that the defendant's agents were negligent in making statements which they should have known, and on their theory did know, were untrue, as applied to the plaintiff. These findings preclude any application of a conditional privilege dependent upon reasonable grounds for believing the statement true. There was therefore no error in the trial court's failure to find the publication privileged in this case.

*Affirmed.*

All concurred.