Hayhurst, N.M.D. v. Timberlake        CV-94-199-SD  04/30/97

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Donald Hayhurst, N.M.D.


_____v.                              Civil No. 94-199-SD


Robert Timberlake;
American Association of
 Naturopathic Physicians;
Institute for Naturopathic
 Medicine;
New Hampshire Association
 of Naturopathic Physicians;
James Sensenig


O R D E R


In this diversity action, plaintiff Donald Hayhurst alleges he was defamed by certain statements made by the defendants.  By order dated May 15, 1996, the court conditionally granted summary judgment in defendants' favor as to the allegations in the complaint but granted plaintiff leave to amend his complaint to state an additional claim based on an alleged defamatory statement made by defendant Robert Timberlake to Patricia DeSilvio in Concord, New Hampshire.  Plaintiff amended the complaint to include defamation and conspiracy claims based on said statement. Subsequently, defendants filed a motion to

dismiss the first amended complaint, which was denied by order dated November 14, 1996. Presently before the court is a motion for summary judgment filed by all defendants,[1] to which plaintiff objects.

## Background

The only remaining claim arises out of the events which took place at the Legislative Office Building in Concord, New Hampshire, on April 30, 1993. Defendant Timberlake and Patricia DeSilvio were present at a meeting concerning New Hampshire House bill 451-FN (HB451), which pertained to the licensing of naturopathic medical professionals in New Hampshire. Following the meeting, Timberlake approached DeSilvio and allegedly defamed Hayhurst by stating,

> Dr. Hayhurst wasn't what I thought he would be. That he was a fraud. He had no credentials, and that he could prove to me--I guess he was trying to get me to join whatever he had. He could prove it to me if I were to go to his office.

Deposition of Patricia DeSilvio at 34, 37 (attached to defendants' motion for summary judgment).[2]

---

[1]The court construes defendants' motion as being filed by all defendants.

[2]Defendants state that Timberlake's recollection of the specific statement differs from that of DeSilvio, but for the purposes of this motion, they do not dispute DeSilvio's allegations. Defendants' Memorandum at 3 n.2.

Defendants have moved for summary judgment on the defamation claim, arguing that (1) the statement was not defamatory; (2) Timberlake was protected by a conditional privilege under both New Hampshire law and the United States Constitution; and (3) plaintiff has failed to demonstrate damages at least equal to $50,000, and is therefore unable to satisfy the requirements for diversity jurisdiction. Defendants have also moved for summary judgment on plaintiff's conspiracy claim.

Discussion

1.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255.

2. Plaintiff's Defamation Claim

To establish defamation, a plaintiff must generally show that "a defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118, 635 A.2d 487, 492 (1993) (citing

4

RESTATEMENT (SECOND) OF TORTS § 558 (1977); 8 Richard B. McNamara, New Hampshire Practice, Personal Injury, Tort and Insurance Practice § 2 (1988)).  A statement is considered defamatory if "it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  RESTATEMENT (SECOND) OF TORTS § 559 (1977).  In other words, it "must tend to lower the plaintiff 'in the esteem of any substantial and respectable group, even though it may be quite a small minority.'"  Duchesnaye v. Munro Enters., Inc., 125 N.H. 244, 252, 480 A.2d 123, 127 (1984) (quoting Thomson v. Cash, 119 N.H. 371, 373, 402 A.2d 651, 653 (1979)).  Whether a given statement is defamatory is a question of law for the court to decide in the first instance.  Nash v. Keene Pub. Corp., 127 N.H. 214, 219, 498 A.2d 348, 351 (1985) (citing Pease v. Telegraph Pub. Co., 121 N.H. 62, 65, 426 A.2d 463, 475 (1981)); see also RESTATEMENT, supra, § 614.

The law of defamation, which furthers the vital public interest of discouraging attacks on reputation, is also subject to the competing concern that it not stifle the freedoms of speech and expression guaranteed by the First Amendment.  In Milkovich v. Lorain Journal Co., 497 U.S. 1, 15-20 (1990), the Supreme Court discussed the extent to which state defamation actions are constrained by the First Amendment.  Because certain

constitutional safeguards[3] had already been built into the law of defamation, the Court declined to adopt an additional constitutional privilege for all statements that can be characterized as opinions.  See id. at 21.  Instead, statements of opinion, like other categories of expression, should be evaluated by whether they can "reasonably be interpreted as stating actual facts about an individual."  Id. at 20 (quotation omitted).  Cf. Duchesnaye, supra, 125 N.H. at 249, 480 A.2d at 125 ("a statement in the form of an opinion may be read to imply defamatory facts, and it is actionable if it is actually understood that way").

However, in so holding, the Court also cited approvingly a prior line of cases which held that loose, figurative, or hyperbolic language cannot ordinarily be the subject of a defamation claim.  See id. at 17-22 (citing Greenbelt Cooperative Publishing Ass'n v. Bresler, 398 U.S. 6 (1970); Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988); Letter Carriers v. Austin, 418 U.S. 264, 284-86 (1974)).  "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally

---

[3]For example, states cannot impose liability for defamation without requiring some showing of fault.  Id. at 15-16.

6

added much to the discourse of our Nation." <u>Milkovich</u>, <u>supra</u>, 497 U.S. at 20.

When considering whether a statement is defamatory, the statement must be considered "in the context of the publication taken as a whole." <u>Duchesnaye</u>, <u>supra</u>, 125 N.H. at 249, 480 A.2d at 125 (quotation omitted). The statement should be examined, not in isolation, but in relation to the other statements uttered at the time. Also relevant is the social context in which the statement was made, the medium by which the statement was published, and the audience to which it was published. <u>See</u> <u>Lyons v. Globe Newspaper Co.</u>, 612 N.E.2d 1158, 1162 (Mass. 1993); <u>cf. McCabe v. Rattiner</u>, 814 F.2d 839, 842 (1st Cir. 1987) (holding that statement should be analyzed in context of article in which it appears along with larger social context to which it relates); RESTATEMENT, <u>supra</u>, § 563 cmts. d, e. As noted by Justice Brennan, "'A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.'" <u>Milkovich</u>, <u>supra</u>, 497 U.S. at 26 (Brennan, J., dissenting) (quoting <u>Towne v. Eisner</u>, 245 U.S. 418, 425 (1918)).

This case arises in the context of an ongoing nationwide battle between members of the community of naturopathic physicians over the issue of whether their profession should be

7

subject to government regulation. Defendants Timberlake and the American Association of Naturopathic Physicians (AANP) have supported legislation that would require licensure of naturopathic physicians. In contrast, Hayhurst has lobbied against this type of legislation in several states. See Deposition of Donald Hayhurst at 158, 159. His efforts included making telephone calls and sending letters to state legislators in New Hampshire in 1993 and 1994, at a time when a licensing bill was under consideration.

On April 30, 1993, Timberlake and DeSilvio both attended a hearing at the legislative office building in Concord, New Hampshire, concerning the proposed legislation. See First Amended Complaint ¶ 8. DeSilvio, a practitioner of naturopathy, testified at the hearing in opposition to the licensing bill. See DeSilvio Deposition at 5, 18, 33 (attached to defendants' motion). After the hearing had ended, Timberlake approached DeSilvio, introduced himself, and then stated that Hayhurst was a fraud without credentials. See DeSilvio Deposition at 37 (attached to plaintiff's objection).[4] He added that Hayhurst "was not what [DeSilvio] thought he was" and "that he could prove that he had no credentials" if DeSilvio came to his office. Id.

---

[4]Plaintiff explains that Timberlake likely thought DeSilvio was one of Hayhurst's supporters.

Timberlake then gave DeSilvio his card, but DeSilvio never contacted him after that. Id. at 46.

When viewed in isolation, the "fraud without credentials" remark might constitute defamation. However, when the context in which the remark was made is considered, the court finds that the remark neither states nor implies actual facts about Hayhurst. First, the remark was made in the midst of a highly charged debate which has concerned, in various ways, the type of credentials naturopathic physicians should be required to possess. At other times, Hayhurst himself has used embellished language when describing naturopathic doctors who favor licensing. For example, in his deposition Hayhurst stated (in reference to Timberlake's organization), "I'm not going to sit idle while a group of untrained masquerading doctors try for a bill that allows them to do minor surgery when they are in fact hurting people." Hayhurst Deposition at 159 (attached to defendants' motion for summary judgment). DeSilvio has also used strident language when discussing the issue of licensing naturopathic physicians: "I was opposed to licensing naturopathic medical doctors. There is no such thing. That is a crock unless they have gone to medical school and done internships in [a] hospital, which they have not." DeSilvio Deposition at 33 (attached to defendants' motion).

9

From these comments, the court concludes that it was hardly unusual for the credentials of naturopathic physicians to be the subject of ridicule and derision in the course of the ongoing debate concerning licensure. Although Timberlake may have "crossed the line" somewhat by identifying Hayhurst as a fraud with no credentials, it appears from this record that Timberlake was merely engaging in the type of rhetorical hyperbole commonly employed by participants in the debate.

Also relevant to the issue is the audience to whom Timberlake was speaking--DeSilvio, who had just openly opposed Timberlake's viewpoint, and who knew that Timberlake was from the opposing side because he had given her his card. DeSilvio stated in her deposition that her opinion of Hayhurst was unaffected by Timberlake's statement because he had no proof.[5] See DeSilvio Deposition at 63, 83 (attached to defendants' motion).

In addition, the vagueness of the terms used by Timberlake make it difficult to find that they imply actual facts about Hayhurst. Timberlake's use of the term "fraud" is ambiguous, and appears to represent simply his opinion about Hayhurst's

---

[5]DeSilvio attaches a supplemental affidavit in which she states that Timberlake's statements temporarily caused her to doubt Hayhurst's credentials until she checked them out for herself. Even if this contradicting affidavit is considered, see Colantuoni v. Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994), it indicates, at most, a de minimis impact on DeSilvio's opinion of Hayhurst's reputation.

10

character.  Similarly, although a statement that someone has "no credentials" might be defamatory in another context, here the very meaning of what it takes to be a credentialed naturopathic doctor was the subject of an ongoing debate.  Given this context, Timberlake could have meant that he had no respect for the schools from which Hayhurst had graduated or that Hayhurst had never graduated from a medical school (which is true).  See, e.g., Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 728 (1st Cir. 1992) (finding that imprecision of the terms "fake" or "phony" make them unprovable because they are susceptible to many interpretations).

Given these circumstances, and that Timberlake's verbal remarks to DeSilvio were simply a brief, one-time occurrence, it appears that Timberlake was primarily sharing his opinion of Hayhurst with DeSilvio and inviting her to assess his information and draw her own conclusions.

Accordingly, after considering the context in which Timberlake's statements to DeSilvio were made, his audience, and his mode of communication, the court finds, as a matter of law, that they were not defamatory.  Rather than stating or implying actual facts about Hayhurst, Timberlake's comments fall into the category of vigorous epithets or loose language protected by the

11

First Amendment.  Defendants are thus entitled to summary judgment as to Hayhurst's defamation claim.


3.  Plaintiff's Conspiracy Claim

A conspiracy action "serves as a device through which vicarious liability for the underlying tort may be imposed on all who commonly plan, take part in, further by cooperation, lend aid to, or encourage the wrongdoers' acts."  University System of N.H. v. U.S. Gypsum, 756 F. Supp. 640, 652 (D.N.H. 1991).  For a conspiracy action to succeed, there must be an underlying tort that the alleged conspirators agreed to commit, and did indeed commit.  See id.  Because the court finds there is no defamation, plaintiff's conspiracy claim must fail as well.


Conclusion

For the foregoing reasons, the court grants defendants' motion for summary judgment (document 127) on plaintiff's

12

defamation claim and plaintiff's conspiracy claim.  The clerk

shall enter judgment accordingly.

SO ORDERED.


                                    _____
                                    Shane Devine, Senior Judge
                                    United States District Court
April 30, 1997
cc:   Linda A. Theroux, Esq.
      Roger Hooban, Esq.
      Gary M. Burt, Esq.
      Paul R. Kfoury, Esq.
      Robert A. Backus, Esq.

13