Straughn v. Delta Air Lines, et al.   CV-98-396-M   03/21/00

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Claire A. Straughn,
      Plaintiff

      v.                                     Civil No. 98-396-M
                                             Opinion No. 2000 DNH 072
Delta Air Lines, Inc.
and ESIS, Inc.,
      Defendants


## O R D E R


Claire Straughn brings this Title VII action against her

Employer, Delta Airlines, and its agent, ESIS, seeking damages

for alleged gender and racial discrimination.  Against ESIS, she

has also raised state law claims for negligence and defamation.

ESIS moves for summary judgment as to all counts.  Plaintiff

objects.


## Background

The pertinent facts and applicable legal standards are

discussed in detail in the court's prior order on Delta's motion

for summary judgment.  Accordingly, only those facts and legal

issues peculiar to Straughn's claims against ESIS need be addressed.

At all times relevant to this proceeding, ESIS administered Delta's self-insured workers' compensation plan under a contract with Delta. ESIS was contractually responsible for investigating, adjusting, and administering claims under the plan.

During her disability, Straughn received workers' compensation benefits from Delta's self-funded plan. ESIS mailed benefit checks directly to her. In the spring of 1997, it occurred to Delta that Straughn might be receiving both her full salary and workers' compensation benefits. Accordingly, Delta asked ESIS whether Straughn had indeed been receiving workers' compensation benefits during her absence from work. In a memorandum dated April 3, 1997, Donna Crews, an employee in Delta's health services department, informed Straughn's supervisor, Lou Giglio, that Straughn had indeed been receiving

2

workers' compensation benefits from ESIS, but had not signed her benefit checks over to Delta (as Delta's policy required of employees receiving both full salary benefits and workers' compensation benefits). In a follow-up memo three days later, Crews informed Giglio that she had spoken with Cathy Ackles, an employee of ESIS, who said that in her initial conversation with Straughn she informed Straughn that if she were receiving both her full salary and workers' compensation benefits during her period of disability, she was required to sign-over to Delta the workers' compensation checks. Straughn claims that Ackles' statement to Crews (i.e., that she informed Straughn of Delta's reimbursement policy) was both false and defamatory.

In June of 1997, Ackles wrote to Michelle McColly, a representative of Delta's personnel department. That letter, which forms the other basis of Straughn's defamation claim against ESIS, provides, in its entirety, the following:

> My name is Catherine Ackles and I am the adjustor handling the workers' compensation claim of Claire Straughn vs. Delta Airlines, Inc.

3

On 1/24/96 I contacted Ms. Straughn and took a statement from her regarding her industrial accident which occurred on 1/19/96. At that time, I explained the workers' compensation benefits to Ms. Straughn, including Delta's salary continuation policy. I explained to Ms. Straughn that if she was on salary continuation with Delta, she would have to turn over the workers' compensation checks that we sent her to Delta. I then asked Ms. Straughn to verify with her supervisor that she was on salary continuation.

Exhibit 4 to Ackles deposition (Exhibit D to plaintiff's memorandum (document no. 46)). Again, Straughn claims that Ackles' assertion that she informed Straughn of her obligation to sign over the workers' compensation checks was defamatory.

Ackles' statements also form the basis of Straughn's federal discrimination claims. Straughn says that ESIS "participated in" Delta's decision to discipline her by reporting that it explained her obligation to sign over workers' compensation benefits to Delta. Apparently, Straughn ascribes a discriminatory motive to ESIS and suggests that it lied about the information it provided to her based upon a racial or gender-based animus.

4

Finally, Straughn claims that ESIS is liable for common law negligence, for having allegedly failed to properly administer her workers' compensation benefits.  In support of her claim that ESIS owed her some actionable duty (presumably to make certain that she was, in fact, complying with Delta's policy requiring employees to sign over workers' compensation checks), Straughn claims that she is the intended third-party beneficiary of the contractual agreement between Delta and ESIS.

**Discussion**

I.   Straughn's Federal Claims.

Straughn claims that ESIS, as the agent of Delta, "participated in" Delta's decision to terminate her employment by reporting to Delta that it informed Straughn of the policy requiring her to sign over her workers' compensation benefit checks.  She alleges that employees of ESIS lied when they told Delta that they had informed her of that policy (an allegation ESIS flatly denies).  Moreover, she says that "lie" was motivated

5

by a gender-based or racially-based discriminatory animus and was aimed at getting her fired.

To argue that ESIS "participated in" Delta's allegedly discriminatory decision to fire Straughn (Delta says she was fired for having misled superiors when asked whether she was receiving duplicate benefits) is a bit of a stretch. ESIS merely reported (inaccurately, according to Straughn) that she was informed of and aware of Delta's policy requiring employees to reimburse it for duplicate benefits. Importantly, however, Delta did not discipline Straughn for <u>receiving</u> duplicate benefits; it terminated her employment after concluding that she repeatedly <u>lied</u> about receiving those benefits. Thus, it is difficult to understand how ESIS played any role in Delta's decision to discipline Straughn. Nevertheless, for purposes of this order, it is assumed that ESIS did "participate" in that decision in some meaningful way.

The parties' respective burdens under the <u>McDonnell Douglas</u> burden-shifting paradigm are addressed in detail in the court's prior order. Assuming Straughn may even bring claims under Title VII and § 1981 against ESIS (a point ESIS disputes), and also assuming she has made prima facie cases of both gender-based and racial discrimination, ESIS has nevertheless responded with a legitimate, non-discriminatory basis for its challenged conduct (i.e., the reports to Delta that Straughn had been informed of the reimbursement policy). ESIS says its agents made those reports because they did, in fact, inform Straughn of her obligation to reimburse Delta for the duplicative payments she was receiving, and it was obligated by contract to keep Delta informed. In response, Straughn points to no evidence which suggests that ESIS's proffered explanation for reporting that fact to Delta is a pretext for discriminatory conduct. That is, Straughn has failed to show that when ESIS (allegedly) falsely reported that it told Straughn of Delta's reimbursement policy, it was motivated by some gender or race-based discriminatory

animus, rather than an intent to carry out its administrative and contractual responsibilities.

As is probably self-evident, the legal and factual bases for Straughn's discrimination claims against ESIS are far from clear and not well-developed. She merely asserts the following:

> Here, despite ESIS' protests to the contrary, it participated in the decision-making process which formed the basis for Ms. Straughn's suspension, termination, discipline, and demotion. In response to Delta's inquiry into Ms. Straughn's receipt of duplicate benefits, ESIS deflected the blame from itself and onto Ms. Straughn by falsely stating that it had informed Ms. Straughn of the proper policies. Then, once Ms. Straughn had been suspended, and during the course of the investigation, ESIS reiterated that it had explained the policies inferring [sic] that Ms. Straughn intentionally disobeyed. Delta took the information from ESIS into account when making its decision.

Plaintiff's memorandum (document no. 46) at 11. Little can be said about that conclusory legal claim. It is sufficient to observe that it does not satisfy Straughn's burden at step three of the McDonnell Douglas test. (Certainly, an effort to merely "deflect the blame" for some perceived administrative error does

8

not raise the spectre of gender or race discrimination.)
Defendant is plainly entitled to judgment as a matter of law with
regard to Straughn's federal discrimination claims (counts one
and two).


II.  Negligence.

Straughn next alleges that ESIS was negligent in
administering her workers' compensation benefits, presumably by
failing to ensure that she complied with Delta's internal
reimbursement policy (she does not, for example, allege that ESIS
should not have paid her the workers' compensation benefits she
received).  See Complaint at para. 122.  ESIS responds by saying
that it owed Straughn no such duty.  Straughn disagrees and
argues that ESIS's duty toward her arises from her status as the
intended third-party beneficiary of the contract between ESIS and
Delta.  See Plaintiff's memorandum at 12-13.

To support her negligence claim, Straughn says that ESIS was contractually obligated under its agreement with Delta to "investigate, adjust and otherwise administer [workers' compensation] claims." Plaintiff's memorandum at 13. She then argues that ESIS's contractual duty to Delta gave rise to an actionable tort duty (albeit poorly defined) owed to her. When ESIS breached that duty, Straughn claims, it proximately caused her to suffer an injury.[1]

It is, of course, well established that to state a viable claim for negligence a party must allege the following essential elements: duty, breach, proximate causation, and harm. See Ronayne v. State of New Hampshire, 137 N.H. 281, 284 (1993). While her negligence claim (to the extent it is properly presented as such) suffers from several deficiencies, the most

---

[1] The court is aware the New Hampshire courts typically view "third party beneficiary" claims as sounding in contract rather than tort. See, e.g., Grossman v. Murray, __ N.H. __, 741 A.2d 1218 (1999); Simpson v. Calivas, 139 N.H. 1 (1994). Nevertheless, the court has addressed plaintiff's claim as she has presented it: as one for negligence.

10

noticeable is the complete absence of support for the final two elements: proximate causation and harm.  Even assuming that ESIS owed Straughn some duty (arising from its contract with Delta) to monitor her benefits, as well as an obligation to insure that she was making timely reimbursement payments to Delta, she has failed to identify any injury that was proximately caused by ESIS's alleged failure to carry out those responsibilities.

As noted in the court's prior order, Delta disciplined Straughn when it justifiably concluded that she repeatedly responded less than truthfully when Delta asked whether she was receiving duplicate benefits.  Importantly, however, the fact that she was receiving duplicate benefits did not motivate Delta's decision to terminate her (a fair number of Delta employees apparently receive duplicate benefits through error and simply arrange to repay them over time).  What prompted Delta to discipline Straughn was her deceitful conduct in response to Delta's inquiries into the situation.

11

Returning to her claim against ESIS, it is entirely unclear how ESIS's conduct did (or even could have) caused her any harm. While Straughn claims that ESIS negligently monitored her receipt of salary and workers' compensation benefits, it certainly did not proximately cause her to make any particular statements to Delta about the benefits she was receiving. And, what prompted Delta to discipline Straughn was its perception, right or wrong, that Straughn's statements (repeated on several occasions) were deceptive. Whether the non-discriminatory reason for disciplining Straughn given by Delta was pretextual or not, nothing suggests any causal connection between ESIS and the discipline meted out, and certainly nothing in the record suggests a discriminatory animus.

Little more need be said about Straughn's negligence claim. It fails for many reasons, the most apparent of which is Straughn's failure to demonstrate that ESIS's allegedly wrongful conduct proximately caused her to suffer any injury. At best, all Straughn could claim is that ESIS's negligence caused her to

be overpaid.  The record clearly demonstrates, however, that it did not in any way prompt Delta to discipline her.  Consequently, ESIS is entitled to judgment as a matter of law as to Straughn's negligence (third-party beneficiary) claim.

III. Defamation.

Straughn's final claim against ESIS is that its employees defamed her by reporting to Delta that they informed her of Delta's reimbursement policy.  Even if, as Straughn claims, that statement is untrue, it is not, as a matter of law, capable of defamatory meaning.

As the New Hampshire Supreme Court has observed, "[i]t is axiomatic that words alleged to be defamatory must be read in the context of the publication taken as a whole."  Duchesnaye v. Munro Enterprises, Inc., 125 N.H. 244, 249 (1984) (citation and internal quotation marks omitted).  And, "[t]o be defamatory, language must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a

13

small minority." Id., at 252 (citation and internal quotation marks omitted). Here, however, Straughn has failed to demonstrate that the statements attributed to ESIS's employees are capable of any reasonable construction (or even arguably give rise to a plausible inference) which might render them defamatory.

> A publication may be defamatory on its face or it may carry a defamatory meaning only by reason of extrinsic circumstances. In the latter case "the plaintiff has the burden of pleading and proving such facts, by way of what is called 'inducement'. Likewise, [s]he must establish the defamatory sense of the publication with reference to such facts, or the 'innuendo.'"

Chagnon v. Union Leader Corp., 103 N.H. 426, 434 (1961) (quoting Prosser, Torts (2d ed.) § 92, p 582). In the end, therefore, "an action in libel cannot be maintained on an artificial, unreasonable, or tortured construction imposed upon innocent words, nor when only 'supersensitive persons, with morbid imaginations' would consider the words defamatory." Thompson v. Cash, 119 N.H. 371, 373 (1979). Straughn's construction of the

14

statements at issue fall into that category and are, therefore, not actionable.

Contrary to the allegations set forth in Straughn's complaint, the record plainly reveals that ESIS did <u>not</u> "publish[] false and defamatory statements that the Plaintiff lied and willfully took money to which she was not entitled." Complaint, para. 131. Similarly, Straughn's assertion that the statements at issue "attribute to Ms. Straughn a criminal motive in retaining the workers' compensation payments," plaintiff's memorandum at 15, is, at best, far-fetched and unsupported by <u>any</u> evidence in the record.

Notwithstanding Straughn's rather strained interpretation of the statements at issue, they are not defamatory. As a result, ESIS is entitled to judgment as a matter of law with regard to Straughn's defamation claim.

## Conclusion

For the foregoing reasons, ESIS's motion for summary judgment as to all claims against it (document no. 24) is granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 21, 2000

cc:   Anna B. Hantz, Esq.
      Heather M. Burns, Esq.
      Jay D. Milone, Esq.
      Mark T. Broth, Esq.
      Martin J. Rooney, Esq.