American v. Hayhurst                    CV-98-126-M    09/29/00

UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


American Association of
Naturopathic Physicians,
     Plaintiff

     v.                                    Civil No. 98-126-M
                                           Opinion No. 2000 DNH 205
Donald Hayhurst and
American Naturopathic
Medical Association, Inc.,
     Defendants


                            **O R D E R**


     Plaintiff, American Association of Naturopathic Physicians

("AANP"), brings this diversity action against Defendants Donald

Hayhurst and the American Naturopathic Medical Association, Inc.

In its two count complaint, AANP sets forth the bases for its

claimed entitlement to damages for malicious prosecution and

conspiracy.[1]  Hayhurst moves for summary judgment.

_____

     [1]    Periodically, AANP's pleadings make reference to a
claim for abuse of process – one that AANP apparently views as
being independent of its claim for malicious prosecution.  The
"corrected version" of its amended complaint (document no. 88)
sets forth no such independent claim, however.

## Standard of Review

When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Background

This case represents yet another battle in an enduring feud between the parties. The struggle began in various state legislative arenas over whether legislation should be enacted to provide for the licensing of naturopathic physicians. It has, at

times, been quite heated and even venomous, as each side has attempted to discredit the other in the eyes of legislators and state policy-makers. As it progressed, the feud seems to have "matured" from a political debate as to which reasonable minds might certainly differ, into mere ad hominem exchanges fueled by increasing personal acrimony on both sides. Unfortunately, the dispute has spilled over into the judicial forum.

During the course of AANP's political lobbying relative to the licensing issue, it (and persons acting on its behalf) distributed materials critical of Hayhurst's education and professional credentials, in an obviously calculated effort to demean him and undermine his political credibility. Those materials sometimes included an article highly critical of Hayhurst published in the April 1990 issue of Townsend Letter for Doctors (an article that was subsequently retracted by the publisher, who also offered an apology to Hayhurst for any "embarrassment, hurt, and inconvenience this article caused Dr. Hayhurst."). See Exhibit 15 to Affidavit of Donald Hayhurst, Townsend Letter for Doctors (August/September, 1992), at 746.

3

Notwithstanding that retraction and apology, it appears that AANP and/or its agents continued to circulate the original article.

In response, Hayhurst brought twelve separate lawsuits in various federal district courts (including this one), in which he alleged that the statements being issued and the materials being circulated by AANP in those fora defamed him. AANP says that two of those cases settled (though the record suggests that at least four were settled by the so-called "Weeks" release) and three were either dismissed on the pleadings or were resolved by summary judgment against Hayhurst, including the proceeding filed in this court. See AANP's objection to summary judgment (document no. 68) at 2-3. The status (or outcome) of the remaining suits is unclear.

AANP now presses this two count action against Hayhurst, alleging (1) malicious prosecution in the institution and maintenance of the referenced suits and (2) a civil conspiracy between Hayhurst and the American Naturopathic Medical Association involving their alleged pursuit of a course of

4

conduct, including the bringing and maintenance of the referenced suits, and designed to destroy AANP. Although AANP says it seeks compensation for Hayhurst's allegedly wrongful conduct in numerous judicial fora, the evidence it has presented in opposition to the motion for summary judgment relates almost exclusively to the defamation action Hayhurst brought in this court.

As discussed more fully below, neither AANP's malicious prosecution nor its conspiracy claim has sufficient support in the record evidence to survive Hayhurst's motion for summary judgment.

<u>Discussion</u>

I. <u>Count 1 - Malicious Prosecution</u>.

Under New Hampshire law, a "successful action for malicious prosecution requires proof that the plaintiff was subjected to a civil proceeding instituted by the defendant, without probable cause and with malice, and that the proceedings terminated in the plaintiff's favor." <u>ERG, Inc. v. Barnes</u>, 137 N.H. 186, 190

5

(1993) (citations omitted).  Hayhurst argues that AANP cannot establish the third and fourth elements of the cause of action (i.e., lack of probable cause and the existence of malice).

A.   Probable Cause.

The existence of probable cause is ultimately a question of law for the court.  Of course, when it turns upon the resolution of factual disputes or the credibility of witnesses, the existence of probable cause becomes a mixed question of law and fact.  See Stock v. Byers, 120 N.H. 844, 846 (1980); MacRae v. Brant, 108 N.H. 177, 180 (1967).  Here, however, AANP has identified no such material factual disputes.  So, whether Hayhurst had probable cause to file the New Hampshire defamation action can be resolved as a matter of law.

To establish a lack of probable cause "[t]he plaintiff [i]s required to prove that the defendants, when they brought their suits against him, did not possess such knowledge of facts 'as would lead a man of ordinary caution and prudence to believe' that they had a cause of action against the plaintiff."  Cohn v.

Saidel, 71 N.H. 558, 567 (1902) (citation omitted).  See also Aranson v. Schroeder, 140 N.H. 359, 367 (1995) (holding that a litigant acts without probable cause when he or she acts "without any credible basis in fact and such action is not warranted by existing law or established equitable principles or a good faith argument for the extension, modification, or reversal of existing law.").  Thus, the burden imposed on a defendant in a proceeding for malicious prosecution - to demonstrate probable cause to initiate the underlying civil action in which he or she was the plaintiff - is not especially onerous.

Nevertheless, AANP alleges that Hayhurst lacked probable cause because, with respect to the defamation action he filed in this district: (1) the Court of Appeals for the First Circuit determined that the action was frivolous; (2) Hayhurst admitted that he had never been to New Hampshire, very few people in New Hampshire knew of him, and he failed to identify anyone whose opinion of him was changed by the alleged defamation; and (3) notwithstanding the fact that he executed a release in a Florida defamation action by which he agreed not to pursue further

7

litigation (the "Weeks" release), he subsequently instituted a defamation action in this court. Hayhurst attacks each of these arguments.

(1) <u>The Court of Appeals' Ruling</u>.

In an unpublished, per curiam opinion disposing of Hayhurst's appeal in the defamation action brought in this district, the court of appeals concluded that, under Rule 38 of the Federal Rules of Appellate procedure, it was proper to award AANP "single costs plus damages, including attorneys' fees." <u>Hayhurst v. Timberlake</u>, No. 97-1697, slip op. at 5 (1st Cir. 1997). Rule 38 provides that, "If a court of appeals determines that an <u>appeal</u> is frivolous, it may . . . award just damages and single or double costs to the appellee." (emphasis supplied). Thus, the issue decided by the court of appeals necessarily related exclusively to the merits of Hayhurst's appeal. To the extent the appellate court offered comment on the underlying merits of the complaint Hayhurst filed in this court (and it is not clear that it did), those comments would constitute dicta, and would not establish, as a matter of law, that Hayhurst lacked

8

probable cause to file the defamation proceeding here. That is to say, Hayhurst is not precluded (in this or any other action) from disputing comments made by the court of appeals relative to probable cause to have brought the suit in this court, based on principles of res judicata, equitable estoppel, or even law of the case. Indeed, the decision in the underlying appeal would not constitute admissible evidence in this case on the question of probable cause to initiate the underlying defamation suit.

AANP has failed to point to any finding by this court (Devine, J.) to the effect that Hayhurst's defamation action was frivolous or lacked probable cause when filed. In fact, the opinions issued by the late Judge Devine suggest just the opposite: while Judge Devine was persuaded that, on balance, the statements ascribed to AANP were not actionable, some of Hayhurst's claims could be viewed as presenting a close question.

In any event, based upon the record presented in this case, the court concludes that a person of ordinary caution and prudence could have reasonably concluded that Hayhurst had a

viable defamation claim against AANP (and others) and, therefore, had probable cause to initiate the New Hampshire defamation action. While the merits of that claim might be questionable (as the court of appeals might have suggested), a reasonable person could justifiably conclude that there was evidence to support each of the essential elements of a viable defamation claim. See, e.g., Hayhurst v. Timberlake, No. 94-199-SD (November 14, 1996) (order denying motion to dismiss Hayhurst's defamation complaint).

    (2)  <u>Hayhurst's Limited Contacts with New Hampshire</u>.

Next, AANP asserts that Hayhurst lacked probable cause to initiate a defamation action in this forum because: (a) he admitted that he had limited contacts with this forum; and (b) he could not specifically identify any person within this state that had been affected by the allegedly defamatory material. Again, the court disagrees.

To state a viable claim for defamation under New Hampshire law, a plaintiff must allege that the defendant intentionally or

without reasonable care published a defamatory statement concerning the plaintiff to a third party who understood the statement's defamatory meaning.  See generally Duchesnaye v. Munro Enterprises, Inc., 125 N.H. 244 (1984); Thompson v. Cash, 119 N.H. 371 (1979).  To sustain his burden of proof, "[t]he plaintiff need not prove publication to a group, however.  Publication to one person other than the plaintiff is actionable."  Duchesnaye, 125 N.H. at 252.

In support of his defamation action, Hayhurst produced evidence tending to establish that a representative of AANP made arguably actionable, disparaging statements about him to Patricia DeSilvio.  This court (Devine, J.) described the evidence as follows:

> On April 30, 1993, Timberlake and DeSilvio both attended a hearing at the legislative office building in Concord, New Hampshire, concerning the proposed legislation.  DeSilvio, a practitioner of naturopathy, testified at the hearing in opposition to the licensing bill.  After the hearing had ended, Timberlake approached DeSilvio, introduced himself, and then stated that Hayhurst was a fraud without credentials.  He added that Hayhurst "was not what DeSilvio thought he was" and "that he could prove that he had no credentials" if DeSilvio came to his office.

11

<u>Hayhurst v. Timberlake</u>, No. 94-199-SD,, slip op. at 9 (D.N.H. April 30, 1997). Ultimately, the court concluded that the statements made by Timberlake were not defamatory, holding that, "[a]lthough Timberlake may have 'crossed the line' somewhat by identifying Hayhurst as a fraud with no credentials, it appears from this record that Timberlake was merely engaging in the type of rhetorical hyperbole commonly employed by participants in this debate." <u>Id.</u>, at 11. That holding does not, however, compel the conclusion that Hayhurst lacked probable cause to believe that he had a viable defamation action against AANP and others.

Just as an acquittal in a criminal case does not necessarily establish that an accused is actually "innocent" of the charged crime, and is not, standing alone, conclusive evidence that a prosecution was brought without probable cause, <u>see</u> <u>Hogan v. Robert H. Irwin Motors, Inc.</u>, 121 N.H. 737, 741-42 (1981), AANP's victory on the merits in the underlying defamation action does not necessarily establish that Hayhurst lacked probable cause to initiate that proceeding. In fact, the language employed by Judge Devine (e.g., that "Timberlake may have 'crossed the line'

12

somewhat") suggests just the opposite: while AANP was entitled to judgment as a matter of law, based on the court's conclusion that the statements at issue were rhetorical hyperbole protected by the First Amendment, it was not an issue so obviously one-sided as to undermine probable cause to raise it.

In short, notwithstanding Judge Devine's ultimate conclusion that the statements upon which Hayhurst relied were not, under the circumstances, defamatory, a person of "ordinary caution and prudence" could reasonably conclude that, once AANP (or its agents) again reported to third parties that Hayhurst was, among other things, a "quack" and a "fraud" with a "useless degree" from an "unaccredited school," see Hayhurst v. Timberlake, No. 97-1697, slip op. at 3 n.1 (1st Cir. 1997), Hayhurst had probable cause to believe a viable claim for defamation existed. See Cohn v. Saidel, 71 N.H. at 567; Aranson v. Schroeder, 140 N.H. at 367.[2]

---

[2]    Parenthetically, the court notes that evidence in the record suggests that the comments about Hayhurst's degree and alma matter were, if not untrue, certainly misleading. See, e.g., Letter of David Young, Oregon Office of Educational Policy and Planning (April 12, 1991), attached to exhibit 4 of

(3)  The "Weeks" Release.

Finally, in support of its assertion that Hayhurst lacked probable cause to initiate the underlying defamation action in this court, AANP points to the so-called "Weeks" release, which the parties executed as part of the settlement of Hayhurst's defamation suits in Florida, Connecticut, Washington, and Arizona.  AANP seems to suggest that by executing the Weeks release, Hayhurst relinquished his right to pursue any and all future defamation claims against AANP.  In other words, AANP seems to argue that the Weeks release amounted to a limited license to defame Hayhurst in the future, without fear that Hayhurst might sue for damages.  The provision of the Weeks release on which AANP relies states that:

> [T]he undersigned specifically releases the said parties for any communications which might arise in the future as a result of any communications or actions by the said parties which might have originated before August 1, 1992, but may not have been disseminated before the date of this release [i.e., March 12, 1993].

Hayhurst's objection to summary judgment.

14

The Weeks release at 2, Exhibit 2 to AANP's memorandum in opposition to summary judgment (emphasis supplied).

Whether Hayhurst intended that document to release AANP from liability from any and all future acts of defamation, and whether the release could, as a matter of law, operate in that fashion, is not an issue the court need address. It is sufficient to observe that Hayhurst filed the New Hampshire defamation action in 1994, seeking damages for affirmative conduct that AANP (and others) engaged in <u>after</u> August 1, 1992 (e.g., the April 30, 1993 statements to Patricia DeSilvio). In other words, the conduct that formed the foundation of Hayhurst's defamation claim did <u>not</u> "originate[] before August 1, 1992." Plainly, therefore, the Weeks release did not preclude Hayhurst from initiating such an action and the existence of that release in no way suggests that Hayhurst lacked probable cause to bring the New Hampshire defamation action.

In fact, the existence of the Weeks release suggests just the opposite. That AANP chose to settle rather than litigate

many of Hayhurst's similar claims in other districts (including those for defamation) supports, rather than undermines, Hayhurst's assertion that he had probable cause to bring those claims. See generally Robinson v. Fimbel Door Co., 113 N.H. 348, 351 (1973) (if a defendant has "terminated the suit by paying what was demanded or by compromise, he cannot be admitted to say that the action was commenced without probable cause, and consequently cannot have an action for malicious prosecution."). And, by implication, the Weeks release supports Hayhurst's claim that he had probable cause to subsequently bring the related New Hampshire defamation proceeding, which was based on substantially similar conduct to that which formed the basis of his other complaints (including those that were settled). See AANP's objection to summary judgment (document no. 68) at 2 (AANP acknowledges that, "In each of these cases essentially the same claims of defamation and conspiracy were made by the Defendant, Hayhurst.") (emphasis supplied).

Plainly, the underlying New Hampshire defamation case was not resolved by settlement; it was resolved on the merits in

16

favor of AANP. However, that fact, alone, does not suggest that Hayhurst lacked probable cause to <u>initiate</u> the suit. And, AANP's apparent assertion that, by filing the New Hampshire defamation action, Hayhurst breached the "Weeks" release, is entirely without merit and provides no support for its claim that Hayhurst lacked probable cause.

B. <u>Malice</u>.

Because AANP has failed to point to any record evidence demonstrating a genuine issue of material fact with regard to the question of Hayhurst's probable cause to bring the New Hampshire defamation action, the question of Hayhurst's alleged "malice" becomes moot. If Hayhurst had probable cause to file the New Hampshire defamation action, his subjective motivation for doing so is immaterial. <u>See, e.g.</u>, <u>Stock v. Byers</u>, 120 N.H. 844, 848 (1980).

Moreover, even if AANP had pointed to evidence suggesting the existence of a genuine dispute as to whether Hayhurst had probable cause, it has failed to identify sufficient evidence to

17

permit a reasonable trier of fact to conclude that he was motivated by malice.  See generally MacRae v. Brant, 108 N.H. 177, 181 (1967) (holding that, in the context of a malicious prosecution claim, "malice" exists "when the primary purpose in instituting the [underlying] proceeding was not to bring an offender to justice, but was, on the contrary, ill will, personal hostility, or to obtain a personal advantage.").

II.  Count II - Conspiracy.

AANP bases its civil conspiracy claim on the assertion that Hayhurst and others conspired to maliciously prosecute the New Hampshire defamation proceeding against it.  To state a viable claim for civil conspiracy, AANP must allege that two or more persons agreed to achieve an unlawful objective (or a lawful objective by unlawful means) and they took one or more unlawful overt acts in furtherance of the conspiracy.  See Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987).  Importantly, there is no cause of action under New Hampshire law for conspiracy alone. That is to say, "[f]or a civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to

18

commit." <u>Univ. Sys. of New Hampshire v. U.S. Gypsum Co.</u>, 756 F.

Supp. 640, 652 (D.N.H. 1991).


Because Hayhurst is entitled to judgment as a matter of law

with regard to AANP's malicious prosecution claim, there is no

"underlying tort" upon which AANP might base its conspiracy

claim.  Accordingly, Hayhurst is necessarily entitled to judgment

as a matter of law on that claim as well.


## Conclusion

For the foregoing reasons, defendant Hayhurst's motion for

summary judgment (document no. 60) is granted.  His motion to

dismiss (document no. 91) is denied as moot.  The Clerk of the

Court shall enter judgment in accordance with this order and

close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 29, 2000

cc:  Robert A. Backus, Esq.
     Donald C. Hayhurst